## 36943. STEVENS v. THE STATE.

JORDAN, Chief Justice.

The defendant was indicted on one count of murder and three counts of aggravated assault: the victim in each count being a police officer. He was found guilty on all charges and sentenced to death for the murder and to twenty years on each count of aggravated assault to

be served consecutively.

The record establishes that on January 22, 1979, the police stopped the defendant for questioning regarding the burglary of a department store in which several weapons had been taken. It was discovered that he was driving under the influence and without a license, whereupon he was arrested. After being questioned at the police station, the defendant agreed to ask around and find out who was involved in the burglary in exchange for his release upon his own recognizance. As a condition to his release, he was to report back by a certain time. When he did not contact the officer at the appointed time, nor for two days thereafter, the police began to look for him. On January 24, investigator Larry Stevens of the Richmond County Sheriff's Department located the defendant, followed him a short way and then stopped him. When the officer stopped the defendant, he radioed this fact and his location to fellow officers.

After the investigator stopped his automobile, he opened his car door and apparently leaned back to do something with his radio. The defendant fired into the car through the windshield striking investigator Stevens in the right forearm and rendering his right arm below the elbow useless. The police officer managed to get his gun out and fired wild shots through his automobile at the defendant. The defendant fired a second shot striking the officer in the right side. Then the defendant walked to the rear of the investigator's automobile, turned, raised the weapon up to shoulder height, and fired in a very calm, deliberate manner through the rear window. The round hit the officer in the chest and was almost immediately fatal. The defendant then went to his car and drove off at a high rate of speed. He intended to go to his mother's house, but stopped on the way at a store to purchase more ammunition. When he approached his mother's house, authorities were waiting for him, and a high speed pursuit then occurred. This occurred approximately twenty-five minutes after the murder. Officers finally trapped the defendant in a cul-de-sac, and a gun battle with the police then ensued. The defendant maintained that when investigator Stevens stopped him, he exited his automobile with a loaded rifle in order to show the officer that he had recovered some of the guns from the burglary and that as he approached the officer's car, the officer, for no reason, shot at him at which instance the defendant then opened fire shooting the officer in self-defense.

"Monkey" Warren testified that the defendant and Paul Lewis came to him on the Sunday night before the victim was killed and showed him some guns they wanted to sell him. The defendant showed him a rifle of the same type that killed the victim and when he didn't want to buy it, the defendant shot through the floor and left.

## Enumerations of Error

1. In enumeration of error 1, the appellant contends the trial court erred in overruling his motion to sever the murder count from the aggravated assault counts for trial. The defendant relies on *Dingler v. State,* 233 Ga. 462 (211 SE2d 752) (1975) in support of his argument. In *Dingler,* supra, p. 463, the court held: "The ABA Standards on Joinder of Offenses provides: 'Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses . . . (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.' "

All the present charges against the defendant arise out of a continuous course of conduct and therefore come within the above quoted standard for joinder of offenses, escape being necessarily a part of the crime. See *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979). There is no merit in this enumeration of error. *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975).

From the nature of the entire transaction, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the other crimes to be introduced, as the murder of the police officer was the probable cause for the chase and the stopping of the defendant which resulted in the shootout. *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975). Cf. *Padgett v. State,* 239 Ga. 556 (238 SE2d 92) (1977); *Hiasman v. State,* 242 Ga. 896 (252 SE2d 397) (1979).

2. In enumerations of error 2 and 6, the appellant contends the trial court erred in overruling defendant's motion for sequestration of the jury panel during individual voir dire and his renewed motion for the same. The defendant argues that presence of peer pressure, when jurors are questioned in the presence of each other, could result in bias or prejudice, although he cites no incident of actual bias or prejudice.

In *Whitlock v. State,* 230 Ga. 700(5) (198 SE2d 865) (1973), this court held that the right to individual examination of jurors given by Code Ann. § 59-705, ". . . does not encompass isolated examination." The court affirmed its holding in *Finney v. State,* 242 Ga. 582 (4) (250 SE2d 388) (1978) and held: ". . . that whether or not this individual questioning of the jurors is to take place outside of the presence of the other jurors is one of those matters lying within the sound discretion of the trial court. Cf. *Arnold v. State,* 236 Ga. 534 (6) (224 SE2d 386) (1976)."

The defendant does not show an abuse of discretion or any prejudice resulting from the failure to allow individual examination

of the jurors; there is no merit in these enumerations of error. *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981); *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981).

3. In enumeration of error 3, the defendant argues that the trial court erred in overruling his motion to quash the indictment which was premised on the indictment's listing of three other names for the defendant under "also known as." The defendant argues that this was done in a deliberate attempt to prejudice the jury into thinking that before them stood, not just a man accused of a serious crime, but a desperado, i.e. one with many aliases. All but one of the listed names were different spellings or abbreviations of the appellant's names.

A motion to quash is not a proper remedy for striking an alias from an indictment. The defendant should have filed a special plea of misnomer averring that he had never been known by any of the names set out in the indictment. *Andrews v. State,* 196 Ga. 84, 110 (26 SE2d 263) (1943). Where an accused is known by different names, however, it is lawful for the indictment to identify the accused by such names as aliases. *Allen v. State,* 231 Ga. 17 (200 SE2d 106) (1973).

In the present case, two of the former convictions introduced at the sentencing phase of the defendant's trial were in the names of two of the aliases listed in the indictment. There is no merit in this enumeration of error.

4. In enumeration of error 4, the appellant contends the trial court erred in overruling his motion for change of venue. In the present case, there were some four articles about the shooting and two editorials and four letters from the public concerning the death penalty as related to the killing of police officers. All of these appeared within a three-week span after the death of the officer, and defendant's trial was not until one year later. Additionally, there were several news reports on radio and television stations at the time of the occurrence.

Although thirty-four of the forty-six jurors stated that they had either read or heard a news broadcast of the occurrence, none of them thought it would influence their decision in the case.

In *Mooney v. State,* 243 Ga. 373, 385 (254 SE2d 337) (1979), in a very lengthy analysis of pre-voir dire motions for change of venue, this court reiterated the holding set out in Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) (1975) that a defendant is entitled to a panel of impartial jurors, but that this does not require that they be totally ignorant of the facts and issues involved. Review of the voir dire reveals that most of the jurors had very little recollection of any articles appearing over a year ago. Most of the prospective jurors answered that they vaguely remembered reading something about a deputy being killed. All of the jurors answered upon careful

examination by the court that they were not influenced in any way by listening to recent radio broadcasts. "The test as to whether pretrial publicity has so prejudiced a case that an accused can not receive a fair trial is whether the jurors summoned to try the case have formed fixed opinions as to guilt or innocence of the accused from reading such publicity." *Dampier v. State,* 245 Ga. 427, 431 (265 SE2d 565) (1980). No juror was excused by the court for prejudice arising out of pre-trial publicity. See *Messer v. State,* supra.

The defendant has failed to show a " 'pattern of deep and bitter prejudice' [created by pre-trial publicity] present throughout the community." Irvin v. Dowd, 366 U. S. 717, 727 (81 SC 1639, 6 LE2d 751) (1961). This enumeration of error is without merit. See *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Collier v. State,* 244 Ga. 553, supra; *Green v. State,* 246 Ga. 598 (272 SE2d 475) (1980); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980).

5. In Enumeration of error 5, the defendant contends the trial court erred in overruling his motion for the appointment of an expert witness to examine the State's evidence. The defendant's only argument on this issue is that the State's expert witnesses, being employees of the State Crime Laboratory are under the direction of prosecution.

The defendant has not alleged that he was harmed by the failure to appoint an expert witness nor has he shown how his defense would have been aided by such a witness. The appointment of expert witnesses lies within the sound discretion of the trial court and absent a showing of an abuse of that discretion, this court will not interfere. *Patterson v. State,* 239 Ga. 409 (3) (238 SE2d 2) (1977); *Dampier v. State,* supra. See *Messer v. State,* supra. There is no merit in this enumeration of error.

6. Defendant, in enumerations of error 7 and 8, contends that the trial court erred in allowing the widow of the victim, following her testimony at trial, to remain in the courtroom. Both the prosecution and the defense sequestered all witnesses.

After the widow of the victim testified, the district attorney requested that she be allowed to remain in the courtroom. Defense counsel objected; upon questioning by the court, however, defense counsel admitted that his objection was not for the purpose of eliciting future testimony from the witness, but to keep her from being seen by the jury. The trial court allowed her to remain in the courtroom but required her to sit in the area furthest from the jury and out of their direct view.

The trial court is vested with broad discretion in the enforcement of the sequestration rule. *Dampier v. State,* supra, and cites. The rule of sequestration does not prohibit persons from

remaining in the courtroom during the proceedings, but merely gives a right to either party to have the witnesses for the other party examined out of the hearing of each other. Code Ann. § 38-1703. Therefore, the trial court did not abuse its discretion in allowing the widow of the victim to remain in the courtroom as she was no longer a witness.

The victim's wife, on direct examination by the State, was asked the usual preliminary questions as to marriage, children and employment. The appellant argues that the testimony of the witness was elicited for the sole purpose of playing on the sympathy and prejudice of the jury. We do not agree. The witness identified the coat and shirt of the victim and testified that the victim was righthanded, a crucial part of the State's case. Her testimony was relevant and admissible. *Solomon v. State,* 247 Ga. 27 (277 SE2d 1) (1980). The identity and general background of the victim are relevant issues in a trial of one accused of his murder, and the trial court did not err in allowing the widow of the victim to testify.

7. Defendant's ninth and tenth enumerations of error contend the trial court erred in admitting two statements given by the defendant. The first statement of the defendant was made to the officer who was transporting him to the Sheriff's office. The defendant told the officer that the victim was a "no good son-of-a-bitch and should have had it happen to him a long time ago." After a hearing, the court found that the officer had not initiated any interrogation of the defendant, but that the incriminating statement was spontaneous and therefore admissible. "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966). The trial court found the defendant's statement to be voluntary. We must accept this factual determination unless that finding is shown to be clearly erroneous. *Pierce v. State,* 235 Ga. 237 (219 SE2d 158) (1975). As the statement seemed to be a purely spontaneous remark, the trial court's finding cannot be said to be clearly erroneous.

The second statement was made after being given his Miranda warnings, and defendant acknowledged that he understood these rights. The defendant argues that even though this is true, the statement is inadmissible because his mother had retained an attorney; the attorney had called the jail looking for the defendant,

and the jailer informed the attorney that the defendant had not been logged into the jail. There is no evidence that the jailer knew the whereabouts of the defendant who was being interrogated at the Sheriff's office. The attorney then told the jailer to inform the defendant not to make any statements until he had consulted with him. By virtue of these events, the appellant contends that the statement was inadmissible although the interrogating officers had no knowledge of these events.

The rights guaranteed under the Fifth and Sixth Amendments are personal. The defendant having chosen to waive his rights (and there being no misconduct on the part of the investigating officers), the trial court did not err in admitting these statements. *Hance v. State,* 245 Ga. 856 (2) (268 SE2d 339) (1980).

8. In enumeration of error 11, the defendant contends the trial court erred in failing to give his request to Charge No. 2. Defendant requested a charge that the aggravated assaults on the three police officers were justified if the officers placed him in reasonable apprehension of immediately receiving a violent injury.

The charge is to be considered as a whole, and where the charge covers the subject matter of the request, it is not error although not in the exact language of the request. *Hawes v. State,* 240 Ga. 327 (3, 8) (240 SE2d 833) (1977); *Moses v. State,* 245 Ga. 180 (2a) (263 SE2d 916) (1980). Looking at the charge as a whole, this general principle of law was covered in the charge on self-defense and need not be repeated again with specific reference to the aggravated assault charges. See *Cape v. State,* 246 Ga. 520 (272 SE2d 487) (1980); *Strickland v. State,* 247 Ga. 219 (275 SE2d 29) (1981).

9. In his twelfth enumeration of error, the defendant contends the trial court erred in failing to charge his request to Charge No. 3. Defendant's request was taken from the language of *Harrell v. State,* 108 Ga. App. 295 (2) (132 SE2d 787) (1963), wherein it was held that where "the State [solely] relies upon the extra-judicial statements of the accused alone to show intent to commit the crime charged and no other evidence is introduced to show such intent, and where the alleged confession of the defendant and his sworn testimony on the trial, considered together, amount to no more than admission of the main fact (that is, the killing of the deceased) with the qualifying exclusion of the necessary ingredient of intent," (here in this case alleged to be self-defense) "and where there is nothing in the proofs submitted by the State which materially contradicted the defendant's account of what occurred, even though the defendant's admission and his testimony may seem unreasonable, where it is the only explanation the State is able to offer, it is insufficient to sustain a conviction."

This court considered this same contention in *Terry v. State,* 243 Ga. 11 (1) (252 SE2d 429) (1979) and concluded: "Thus we have one rule, *Harrell v. State,* supra, which appears to say that under the limited circumstances stated there, the defendant's explanation of the homicide must be accepted, and another rule, *Jenkins v. State,* [241 Ga. 212 (244 SE2d 868) (1978)], which appears to say that the defendant's explanation may be rejected. The difference between these two rules is that the former is applicable where the defendant's statement is consistent with the physical facts shown, but the latter rule may be relied upon by the State where the defendant's statement is not consistent with and does not explain the other direct and circumstantial evidence. [cits.]"

In the instant case, the defendant's incriminating statements are not consistent with the physical facts. The victim was shot three times with a high-powered rifle, and therefore, his claim of self-defense could be rejected. *Jenkins v. State,* supra; *Smith v. State,* 202 Ga. 851 (45 SE2d 267) (1947). Furthermore, a postman testified at trial that he had witnessed the defendant move to the rear of the victim's car and shoot the victim after a period of deliberation. The State's evidence, direct and circumstantial, contradicted the defendant's self-defense theory and authorized the jury to find the defendant guilty of murder. There is no merit in this enumeration of error.

10. In enumerations of error 13 and 14, the defendant contends the trial court erred in failing to give two requested charges on involuntary manslaughter. The defendant argues that he used excessive force in the act of self-defense and thus was entitled to a charge on a lawful act performed in an unlawful manner. This argument was raised and rejected in *Crawford v. State,* 245 Ga. 89 (3) (263 SE2d 131) (1980). There is no merit in these enumerations of error.

11. In enumeration of error 15, the defendant contends the trial court erred in failing to give his request to charge on simple assault as a lesser included offense of aggravated assault. There is no evidence in this case that would require a charge on the lesser included offense of simple assault. There is no merit in this enumeration of error.

12. In enumeration of error 16, the defendant contends the trial court erred in charging that malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. The defendant contends this is a burden-shifting charge in violation of the constitutional standards set forth in Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).

This same argument was made in *Tucker v. State,* 245 Ga. 68 (5) (263 SE2d 109) (1980), and this court ruled as follows: "The inference in the present case does not 'undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.' Rather it leaves the trier of fact 'free to credit or reject the inference and does not shift the burden of proof . . .' County Court of Ulster County, New York v. Allen, [442] U. S. [140] (99 SC 2213, 60 LE2d 777) (1979)." There is no merit in this enumeration of error.

13. The defendant, in his seventeenth enumeration of error, argues that the trial court erred in charging Code Ann. § 26-902 (b). This Code section involves self-defense and subsection (b) contains the negative or exception to the self-defense theory.

"It is not usually cause for a new trial that an entire Code section is given. *Ford v. State,* 232 Ga. 511, 517 (12) (207 SE2d 494) (1944). Accord, *Highland v. State,* 127 Ga. App. 518 (1) (194 SE2d 332) (1972). This is so even though a part of the charge may be inapplicable under the facts in evidence. *Highland,* supra, at p. 519. *Rowles v. State,* 143 Ga. App. 553, 557 (239 SE2d 164) (1977) cert. den. Accord, *Pippin v. State,* 205 Ga. 316 (9), 323 (53 SE2d 482) (1949)." *Keller v. State,* 245 Ga. 522 (1) (265 SE2d 813) (1980).

14. In enumeration of error 19, the defendant contends the trial court erred in allowing evidence of prior non-capital convictions at the sentencing phase of his trial. The defendant argues that although this court has consistently held that prior convictions can be admitted at the sentencing phase of a murder trial, these cases should be overruled.

If the defendant had no prior criminal record, he would certainly want this fact in evidence, and the State should be allowed the same consideration in presenting its case. See, *Hughes v. State,* 239 Ga. 393 (4) (236 SE2d 829) (1977); *Davis v. State,* 241 Ga. 376 (6) (247 SE2d 45) (1978). There is no merit in this enumeration of error. *Fair v. State,* 245 Ga 868 (268 SE2d 316) (1980).

15. In enumerations of error 20, 21, 22 and 23, the defendant contends the trial court erred in its charges on aggravating circumstances and in recharging a portion after objection by defendant. The court charged three aggravating circumstances: that the murder was committed to prevent a lawful arrest; that the murder was committed against a police officer engaged in the performance of his duties; and, that the murder was outrageously and wantonly vile, horrible and inhuman, in that it involved torture and depravity of mind.

The defense counsel objected to the use of the word torture, and the trial court recharged omitting this word; therefore, counsel

cannot now complain. Nor was the recharge an impermissible expression of the trial court's opinion as to the evidence. *Finney v. State,* supra. The aggravating circumstances contended by the State form the issue to be tried during the punishment phase of the trial of a capital felony. Code Ann. § 27-2534.1 (b) (1-10). The court properly charged the contentions of the State, and there is no merit in these enumerations of error.

16. In enumerations of error 25 and 27, the defendant contends the trial court expressed an opinion in ruling on an objection to a question asked defendant on cross examination and in questioning witnesses. "It was not error for the trial judge to refer to the testimony in deciding the objections raised in this case and it was clear that the trial judge was not expressing an opinion but ruling on the objections made. [Cits.]" *Wright v. State,* 223 Ga. 849 (159 SE2d 76) (1968). See *Tucker v. State,* supra. Nor is it error for the trial judge to propound questions to any witness for the purpose of fully developing the truth of the case. This court has examined each instance cited by appellant where the trial court examined a witness, and we find no improper expression of opinion. *Thomas v. State,* 240 Ga. 393, 400 (242 SE2d 1) (1977); *Cape v. State,* supra. There is no merit in these enumerations of error.

17. This court and the Supreme Court of the United States have upheld the constitutionality of the Georgia death penalty statute in a number of cases, and the appellant has advanced no new reason for us to reconsider our position. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); *Legare v. State,* 243 Ga. 744 (257 SE2d 247) (1979) and cites.

18. In enumerations of error 28, 29, 30, 31, 32 and 33, the defendant contends the trial court erred in failing to charge seven requests to charge at the sentencing phase of defendant's trial. Each request to charge contained some fact or circumstance in evidence and instructed the jury that it could be considered in mitigation.

Similar contentions were presented in *Spivey v. State,* 241 Ga. 477 (2) (246 SE2d 288) (1978), and, after analyzing former cases of this court and the Supreme Court of the United States, this court concluded that "When Georgia juries are instructed in sentencing to consider all the facts and circumstances which have appeared at both phases of the trial, this necessarily includes any mitigating circumstances which defendant has shown, or argued, or both. The trial court did not err in failing to use the talismanic words, 'mitigating circumstances,' nor did it err in failing to charge specifically that certain evidence was to be deemed mitigating." p. 481. There is no merit in these enumerations of error. *Collier v. State,* supra; *Cape v. State,* supra.

19. In enumerations of error 34, 35, 36, 37, 38 and 39, the defendant contends the trial court erred in excusing six prospective jurors for cause under Witherspoon. Each juror answered unequivocally that he or she was opposed to capital punishment and could not vote for the death penalty regardless of the evidence presented in the case. Although counsel for defendant attempted to rehabilitate these jurors by informing them that they were not required to return a verdict of death, in the final analysis, each said that he or she could not impose a sentence of death. We find no merit in these enumerations of error. See, *Ruffin v. State,* 243 Ga. 95 (3) (252 SE2d 472) (1979); *Legare v. State,* supra, and *Thomas v. State,* 245 Ga. 688 (2) (266 SE2d 499) (1980).

20. In enumerations of error 40, 41 and 42, defendant raises general grounds. We have reviewed the entire record in this case and find the evidence sufficient to support the finding of the jury beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). There is no merit in these enumerations of error.

## Sentence Review

As required by Georgia law (1973) p. 159 et. seq., (Code Ann. § 27-2537 (c) (1-3)) we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury, and the evidence concerning the crime and the defendant. We conclude that the sentence of death in this case was not imposed under the influence of passion, prejudice or any arbitrary factor.

The jury found the following aggravating circumstances to exist beyond a reasonable doubt: (1) § 27-2534.1 (b) (7)—The offense of murder was outrageously and wantonly vile, horrible and inhuman, in that it involved depravity of mind; (2) § 27-2534.1 (b) (10)—The murder was committed for the purpose of preventing the lawful arrest of the offender; (3) § 27-2534.1 (b) (8)—The offense of murder was committed against a peace officer while he was engaged in the performance of his official duties.

Although, for reasons noted below, we reverse the first and second aggravating circumstances found by the jury, we find that the evidence factually supports a finding beyond a reasonable doubt that the offense of murder was committed against a peace officer while he was engaged in the performance of his official duties. Jackson v. Virginia, 443 U. S. 307, supra.

The State introduced evidence that the officer was on duty at the time of the murder, that he was investigating a burglary, and that he was stopping the defendant based upon the defendant's agreement that he would provide information as to the burglary and the arms taken therein as a condition for his release upon his own

recognizance.

"Where two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance, or in this case two, does not taint the proceedings so as to invalidate the other aggravating circumstance found and the sentence of death based thereon." *Burger v. State,* 245 Ga. 458, 462 (265 SE2d 296) (1980).

Accordingly, we affirm the imposition of the death penalty in the present case.

21. The trial court in its charge to the jury during the sentencing phase of the trial instructed the jury as to Code Ann. § 27-2534.1 (b) (7) in the following manner: "The offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved depravity of mind." The jury, after a time of deliberation, requested the court to define "depravity." The trial court answered the jury's question by instructing them that the charge was complete in itself.

Appellant argues that the trial court erred in failing to define "depravity" when requested to do so by the jury, citing Godfrey v. Georgia, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980). Under the facts and circumstances of this case, we agree. Obviously, the jury was confused as to the definition of depravity of mind, a word of common meaning and understanding. In the cases of *Hance v. State,* 245 Ga. 856 (268 SE2d 339) (1980) and *Strickland v. State,* 247 Ga. 219 (275 SE2d 29) (1981), decided since this case was tried, we defined depravity of mind. The jury should have been instructed in response to their request and not allowed to continue deliberations with this confusion unresolved. *Hance v. State,* supra; *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Lamb v. State,* 241 Ga. 10 (243 SE2d 59) (1978).

22. The State did not prove a technically lawful arrest of the offender beyond a reasonable doubt.

23. The charge of court complied with standards set forth in *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1978); and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1978).

24. Finally, defendant argues the trial court erred in refusing to allow Dr. Phillip Reichel to testify as an expert witness on the subject of the nondeterrent effect of capital punishment on crime. This issue has been raised before and decided adversely to defendant's position. *Franklin v. State,* 245 Ga. 141 (263 SE2d 666) (1980). See, *Collier v. State,* supra; *Fair v. State,* 245 Ga. 868 (268 SE2d 316) (1980).

The murder was an execution-style slaying of a police officer engaged in the performance of his official duties. The fatal shot was deliberate and inflicted only after the officer was lying helplessly in his automobile, seriously wounded. In reviewing the death penalty in

this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed.

We find the following similar cases listed in the appendix support the affirmance of the death penalty. Defendant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

The twelve cases in which the death penalty was imposed supports the death penalty in the instant case. All of these cases except *Jones* (it involved the killing of a security guard) involved the deliberate killing of a police officer thus showing a jury's willingness to give the death penalty under these circumstances.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 2, 1981 —
REHEARING DENIED JUNE 23, 1981.

*Charles L. Wilkinson III*, for appellant.
*Richard E. Allen, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General*, for appellee.

APPENDIX.

*Johnson v. State*, 226 Ga. 378 (174 SE2d 902) (1970); *Callahan v. State*, 229 Ga. 737 (194 SE2d 431) (1972); *Whitlock v. State*, 230 Ga. 700 (198 SE2d 865) (1973); *Bennett v. State*, 231 Ga. 458 (202 SE2d 99) (1973); *Ross v. State*, 233 Ga. 361 (211 SE2d 356) (1974); *Spencer v. State*, 236 Ga. 697 (224 SE2d 910) (1976); *Fleming v. State*, 240 Ga. 142 (240 SE2d 37) (1977); *Willis v. State*, 243 Ga. 185 (253 SE2d 70) (1979); *Jones v. State*, 243 Ga. 820 (256 SE2d 907) (1979); *Collier v. State*, 244 Ga. 553 (261 SE2d 364) (1979); *Lewis v. State*, 246 Ga. 101 (268 SE2d 915) (1980); *McClesky v. State*, 245 Ga. 108 (263 SE2d 146) (1980).