### 37517. WALLACE v. THE STATE.

JORDAN, Chief Justice.

This is a death case. The appellant, Robert Lewis Wallace, was indicted for the murder of a Union Point police officer, an aggravated assault committed upon another Union Point police officer, the theft of a Union Point police vehicle, and driving under the influence. Although the offenses occurred in Greene County, a change of venue was granted and the appellant was tried in Baldwin County Superior Court. He was found guilty of all charges. The jury found the existence of three aggravating circumstances and returned a death sentence. The trial court sentenced the appellant to death for the murder, twenty years imprisonment for the aggravated assault, seven

years for the motor vehicle theft, and one year for driving while intoxicated — all sentences to be served consecutively.

The case is here on direct appeal, and for mandatory review of the death sentence.

From the evidence presented at trial, the jury was authorized to find the following facts:

The appellant was at the home of his girlfriend, Teresa Herring, on May 15, 1979. He was drinking and around midnight decided to drive to Atlanta to find a job. His girlfriend gave a statement to the GBI in which she said that she did not want him to leave and told him he would be stopped by the police for driving while intoxicated. He replied to the effect that if he were to be stopped by the police he would "shoot hell out of them." At trial she partially recanted her statement. The appellant had a shotgun, a pistol and three rifles in the car when he left Teresa Herring's home.

Just after midnight on May 16, 1979, officers Rowry and Cook were patrolling the City of Union Point. The officers observed the appellant's car weaving across the centerline and going on and off the shoulder of the road. The officers stopped the appellant and, smelling alcohol on his breath, gave him a field test which was positive. They asked appellant for his driver's license. Appellant told the officers it was not on his person and started to rummage through a box in the back of the car. The officers ordered him to stop and transported him to jail for a formal breath test.

After being transported, appellant was given a breath test which revealed a .11% blood alcohol content. He was told by the police that they would have to lock him up for driving under the influence and that he could be released on bond after four hours. Officer Rowry then left the room and went to prepare a cell. The appellant, alone with Officer Cook, begged not to be locked up. Officer Cook then took the appellant by the arm and told him to come on. At that point, appellant grabbed the officer's .357 magnum pistol and they grappled. Officer Rowry, hearing the scuffle, came back to help just as Officer Cook was shot in the lower abdomen. Officer Cook fell and momentarily lost consciousness. Appellant then shot Officer Rowry in the neck. Officer Rowry turned and ran, at which time appellant again fired but missed. He then turned and pointed the gun in Officer Cook's face from a distance of less than 2 feet and fired. However, Officer Cook moved his head and was not shot but received cuts from debris and powder burns. The appellant fled the scene in a patrol car.

Officer Cook was able to summon help. He was transported to a hospital and survived. Officer Rowry's body was found down the street from the jail.

Appellant hid the patrol car in the woods in Wilkes County and

then made his way to his brother's home. He told his brother of the shooting and asked him to look into it. The brother found out that one of the officers died and that it was dangerous for appellant to stay around. Appellant decided to go to Atlanta. His brother gave him a .22 magnum pistol, which appellant took to Atlanta, along with a shotgun he had taken from the patrol car.

In Atlanta, appellant could not find a place to stay. Finally, he found a vacant basement apartment which he thought was in a deserted building. However, a woman lived upstairs. When she heard noises she called the Atlanta police, who investigated. They found the appellant behind a barricaded door. When he was arrested, he was reaching for the shotgun. When asked about the incident in Union Point, the appellant said he shot one officer in the stomach but didn't remember shooting anyone else. He stated he shot the officer because they were too lax and not paying attention to what they were doing. However, he said they had been nice to him. He further stated he had started to shoot the arresting officers but surrendered instead.

Appellant led officers back to the stolen patrol car but refused to show the officers where he hid the gun. He said in reply to their request, "No murder weapon, no case."

Appellant's father testified that appellant was nice unless he didn't get his way and then he becomes upset. Appellant presented evidence of mental disease that had been diagnosed as schizophrenia, latent-type. However, appellant did not contend that he was insane at the time of the commission of the offense.

1. Appellant filed a special plea of insanity contending that he was incompetent to stand trial. A competency hearing was held and the jury determined that appellant was competent. His first enumeration of error asserts the general grounds as to the jury's finding that he was competent to stand trial.

"The issue raised in a plea of mental incompetency to stand trial is whether an individual is capable of understanding the nature and object of the proceedings, whether he comprehends his own condition in reference to such proceedings and whether he is capable of rendering his counsel assistance in providing a proper defense ... The question is not whether he will assist in his defense, but whether he is capable of doing so." *Banks v. State,* 246 Ga. 178, 181 (269 SE2d 450) (1980). Appellant did not contest the first two issues, but asserted below through counsel that he was incapable of rendering his counsel assistance in providing a proper defense.

The defense presented evidence from the appellant's father, sister and minister during the hearing on the special plea. The father and sister testified that appellant had sniffed gas as a child but had stopped. They also testified that he worked and drove a car. His sister

testified that if you did not know appellant, he was hard to talk to because he carried on conversations about multiple subjects. However, she also testified that if you "go back and find out what he is talking about then it starts to make sense." The Reverend General Lee Avery testified that he observed appellant in jail and that he complained of having venereal disease and other phantom illnesses, that his conversations at times did not make sense and he was getting progressively worse. Appellant's attorneys, both presently retained counsel and former appointed counsel, testified he sometimes would not talk about the case, his conversation would wander off the subject, and he could not effectively communicate relevant facts regarding his defense.

Appellant also introduced expert psychiatric testimony. Dr. B. H. Hirane and Dr. Louis Jacobs examined appellant on three occasions at Central State Hospital. After each of the first two examinations, the doctors found appellant competent to stand trial. However, on his last examination, they found appellant incompetent in that his condition had progressed to the point that his thought processes were so "loose" he could not communicate. A private psychiatrist, Dr. Baccus, also testified that appellant was incompetent to stand trial. His conclusion was reached at a time when the other psychiatrists had found appellant competent. He further testified that appellant became more physically unkempt on each interview.

However, the State elicited evidence that appellant had been advised by his attorneys not to talk to the medical staff about the elements of the crime. Appellant also refused to participate in any psychological testing. Furthermore, the private psychiatrist testified that his evaluation was based in part on appellant's previous history, which in some instances was not entirely correct, especially as to prior audio hallucinations. The appellant knew of the purpose of the examinations, that two of the examining physicians were employed by the State and that if found to be incompetent he could not stand trial. All the expert witnesses testified appellant was intelligent enough to fake his condition but they were of the opinion he was not faking.

Testimony from jailors and another prisoner established that the appellant read, wrote coherent letters, made phone calls, painted in his cell, carried on ordinary conversations, and displayed proper personal hygiene. The State also presented evidence that appellant gave a detailed, accurate, and lucid description of the crime and where the car was hidden to officers after his arrest.

The trial of a special plea of insanity is in the nature of a civil proceeding and the burden of producing evidence is on the de-

fendant. *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976); *Corn v. State,* 240 Ga. 130 (6) (240 SE2d 649) (1977); *Banks v. State,* supra. We do not agree with appellant's argument that in a death case the State should have the burden of disproving all mitigating circumstances, including competency. In this context, incompetency at time of trial is not a mitigating circumstance. See *Fair v. State,* 245 Ga. 868 (268 SE2d 316) (1980).

The constitutionality of placing the burden of proving insanity upon the defendant has been recognized by this court and by the Supreme Court of the United States. *Durham v. State,* 239 Ga. 697 (238 SE2d 334) (1977); Patterson v. New York, 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977).

The weight and credibility to be given the testimony of witnesses is in the exclusive province of the jury. *Hogan v. State,* 221 Ga. 9 (142 SE2d 778) (1965); *Strong v. State,* 232 Ga. 294 (206 SE2d 461) (1974).

If the facts are given on which opinions are based, laymen are competent to give opinions on a person's mental condition. *Coker v. State,* 234 Ga. 555 (216 SE2d 782) (1975), revd. on other grounds, 433 U. S. 584 (97 SC 2861, 53 LE2d 982); *Currelley v. State,* 145 Ga. App. 29 (243 SE2d 307) (1978).

Competent testimony having established an issue for the jury, we find no merit in this enumeration. *Leggett v. State,* 244 Ga. 226 (259 SE2d 476) (1979). See *Strickland v. State,* 247 Ga. 219 (275 SE2d 29) (1981).

2. In his second enumeration of error appellant asserts that the trial court erred in limiting his counsel's voir dire examination of prospective jurors on the trial of the special plea of insanity. Code Ann. § 59-705. Each juror was asked whether he would follow a charge of the court as to mental competency and whether the juror could set aside any evidence which might be elicited pertaining to guilt or innocence of the actual charges. The trial court sustained objections to both questions. Both questions were of a technical legal nature as they were subjects of the instruction by the court at the conclusion of the trial. They therefore were not a proper area for voir dire examination. *Smith v. State,* 238 Ga. 146 (231 SE2d 757) (1977); *Stack v. State,* 234 Ga. 19 (214 SE2d 514) (1975); *Pinion v. State,* 225 Ga. 36 (165 SE2d 708) (1969).

3. In his third enumeration of error, appellant argues that the trial court erred in excluding relevant evidence offered by him during the trial on his special plea of insanity. Appellant attempted to introduce photographs of the unkept interior of the house he occupied at least some of the time prior to his arrest. The State offered evidence of the neat condition of appellant's cell and his personal hygiene. The trial court excluded the photographs as being

irrelevant in that they bore on the mental condition of the appellant prior to the crime. Appellant's own witness, Dr. Baccus, testified as to the deteriorating personal hygiene and appearance of the appellant on each occasion he was examined, and other defense experts testified that appellant had deteriorated during confinement so that although initially competent, he was not then able to communicate effectively with counsel. The issue at a hearing upon a special plea of insanity was the mental competency of the appellant to stand trial. The trial court did not err in limiting the evidence to his mental state after his arrest. *Cochran v. State,* 212 Ga. 245 (91 SE2d 601) (1956).

4. During the competency hearing, the district attorney in cross examining one of the appellant's expert witnesses asked "If under the law, . . . if he had . . . no defense to present, whether he is competent or not, it wouldn't matter would it?" Appellant contends that the trial court erred in permitting the question. We do not agree. Pre-termitting waiver, the line of questioning was testing the doctor's standard used to determine competency.

This line of questioning began as follows:

"Q. Do you understand that the matter of competency depends upon whether or not he is able to understand the charges against him, whether or not he is able to understand his relationship to that situation, and whether or not he is able at this time to assist his attorney in the preparation and presentation of his defense, if he has a defense?

"A. Yes, sir.

"Q. Now, if he does not have a defense, then he would have nothing to contribute, would he, doctor?"

The district attorney then asked, "Now understanding this how did you decide that he was incompetent at this time?" There was no contemporaneous objection.

Appellant further asserts that the trial judge erred in allowing the State to introduce his statements after arrest along with testimony of eyewitnesses who corroborated the statements. While it is true that evidence of the guilt of a defendant is irrelevant at a trial of a special plea of insanity, statements of a defendant may be introduced even though they are inculpatory in nature for the purpose of illustrating mental condition and the defendant's ability to communicate after the crime. *Cochran v. State,* supra. The trial court carefully instructed the jury that the evidence was being offered for the sole purpose of determining mental competency and was not to be considered as bearing on the guilt or innocence of the accused. Nor do we find error in the State's cross-examination of a defense expert as to whether he found the appellant "responsible as to the crime."

Appellant's fourth, fifth, sixth and seventh enumerations of error are without merit.

5. In the instant case, both the murder victim and the appellant were of the same race. At the guilt-innocence phase of the trial, defense counsel on voir dire asked a juror whether she belonged to any organization that excluded black people. The district attorney objected on the ground that race was not an issue and such a question would inject a racial issue into the case. The trial court sustained the objection and the appellant asserts error, citing *Cowan v. State,* 156 Ga. App. 650 (275 SE2d 665) (1980), and Ham v. South Carolina, 409 U. S. 524 (93 SC 848, 35 LE2d 46) (1972).

Prior to trial defense counsel submitted a written voir dire questionnaire which the trial court in its discretion allowed to be used. That questionnaire inquired about all social, religious, fraternal services or charitable organizations to which each juror belonged. Appellant therefore had in his possession a list of organizations to which each juror belonged.

In *Cowan v. State,* supra, the Court of Appeals held that a denial by the trial court of counsel's request to inquire into the fraternal, social, or other organizations to which each juror belonged was error in light of the statute, Code Ann. § 59-705, which expressly grants that right. That was not the case here where counsel was expressly afforded that right.

Ham v. South Carolina dealt with a trial judge's refusal to allow inquiry into racial prejudice any veniremen might have had against the defendant. That also is not in issue here.

The trial court did not abuse his discretion prohibiting further inquiry. *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979).

6. In his ninth enumeration of error, appellant contends that the trial court erred in admitting into evidence rifles found in the trunk of his car. Appellant argues that since there was no testimony that the weapons were loaded, or that they were used in an illegal manner, or that appellant reached for them, they were irrelevant as to any issue. We do not agree. The statement of his girlfriend, later recanted at trial, showed that appellant said he would shoot any officer who stopped him. There also was testimony that appellant had a shotgun and pistol in the car with him. Evidence of other weapons in the automobile was relevant to show how heavily armed the appellant was and to illustrate his state of mind. This enumeration is without merit. See *Wall v. State,* 126 Ga. 86 (4) (54 SE 815) (1906); *Castleberry v. State,* 152 Ga. App. 769 (264 SE2d 239) (1979).

7. The trial court did not err in failing, upon written request, to charge on voluntary manslaughter as there was no factual basis for

such a charge. In fact, according to defendant's own statement, the officers were "nice" to him. *Gilreath v. State,* 247 Ga. 814 (279 SE2d 650) (1981); *Stevens v. State,* 247 Ga. 698 (278 SE2d 398) (1981); *Strickland v. State,* 247 Ga. 219 (275 SE2d 29) (1981); *Hardy v. State,* 245 Ga. 272 (264 SE2d 209) (1980).

8. The trial court charged Code Ann. § 26-1101, including implied malice. Appellant's argument that such a charge is burden shifting or creates an impermissible inference has been raised before and decided to the contrary. *Franklin v. State,* 245 Ga. 141 (263 SE2d 666) (1980); *Burney v. State,* 244 Ga. 33 (257 SE2d 543) (1979).

However, appellant further argues that the trial court's exclusion of evidence of his mental state at the time of the commission of the crime proffered during the guilt-innocence phase of the trial, along with the charge of implied malice, relieved the State from proving an essential element of the crime.

Appellant's counsel attempted to introduce expert evidence to the effect that appellant suffered from a mental disease which could have lessened his ability to form an intent to murder or render him unable to form the requisite malice. However, defense counsel clearly informed the court in argument when the State objected that the defense was not contending that appellant was insane at the time of the commission of the crime under the tests for criminal responsibility. Therefore, the trial court properly excluded the evidence as irrelevant to guilt-innocence. Mental abnormality, unless it amounts to insanity, is not a defense to a crime. *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975).

Appellant's eleventh and twelfth enumerations of error are without merit.

9. The trial court charged the jury during the guilt-innocence phase of the trial on burden of proof, presumption of innocence, reasonable doubt, direct and circumstantial evidence, and that the burden is not upon the defendant to establish his innocence but that the burden is upon the State to prove his guilt. The trial court further charged the jury as follows: "I charge you that a person will not be presumed to act with criminal intention but the trier of facts . . ., may find such intention upon consideration of words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted. A specific intent to commit the crime . . . is an essential element that the State must prove beyond a reasonable doubt. Intent may be shown in many ways provided the jury finds that it existed from the evidence produced before them. *It may be inferred from the proven circumstances or by acts and conduct, or it may be presumed when it is the natural and necessary consequence of the act.*" Appellant argues that the italicized portion of the charge

violated the rule of Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), because the charge created a conclusive presumption and was burden shifting. We do not agree. *Rakestraw v. State,* 155 Ga. App. 563 (271 SE2d 696) (1980). Of course, a jury instruction should not be examined in isolation but the charge must be examined as a whole. *Blankenship v. State,* 247 Ga. 590 (277 SE2d 505) (1981). From the charge, read as a whole, the jury only could have understood that appellant could not be convicted unless the State proved criminal intent beyond a reasonable doubt and that for the State to prove intent, the State must prove beyond a reasonable doubt that the requisite criminal intent was the natural and necessary consequence of proven acts. For, the presumption "allows but does not require . . . the trier of fact to infer the [element of the crime] from proof by the prosecution of the basic [fact] and that places no burden of any kind on the defendant." County Court of Ulster County, New York v. Allen, 442 U. S. 140 (99 SC 2213, 60 LE2d 777) (1979); *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980). See *Denton v. State,* 154 Ga. App. 427 (268 SE2d 725) (1980), concurring opinion, Carley, Judge.

Furthermore, there was evidence before the jury of objective conduct demonstrating criminal intent. United States v. Caucci, 635 F2d 441 (5th Cir. 1981).

10. During the sentencing phase of the trial, the defense called Aretha Jenkins, the appellant's first teacher, as a witness. Defense counsel asked the witness whether she thought the appellant should be sentenced to death and the State's objection was sustained. Appellant argues that the exclusion of this testimony prevented the jury from considering all mitigating circumstances, citing Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978).

The witness was allowed to testify as to the facts and circumstances of the appellant's life that were of a mitigating nature and the trial court did not err in excluding the personal opinion of the witness as to whether the death penalty should be imposed. *Brooks v. State,* 244 Ga. 574 (5) (261 SE2d 379) (1979); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979).

11. In his last two enumerations of error, the appellant contends that a Witherspoon qualified jury deprived him of a jury chosen from a fair cross section of the community and that in addition, a jury qualified under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968) would be guilt-prone, or in effect a "hanging jury." Both these arguments have been raised before and decided adversely to appellant's position. *Brown v. State,* 247 Ga. 298 (275 SE2d 52) (1981), and cits; *Nelson v. State,* 247 Ga. 172 (274 SE2d 317) (1981), and cits.

*Sentence Review*

As required by Georgia Laws 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury, and the evidence concerning the crime and the defendant. We conclude that the sentence of death in this case was not imposed under the influence of passion, prejudice or any arbitrary factor.

12. The evidence, when viewed as a whole, is sufficient to authorize a rational trier of fact to find the appellant guilty of the crimes charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (79 SC 2781, 61 LE2d 560) (1979).

13. The charge of the trial court complied with the standards set forth in *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977).

14. The jury found the following statutory aggravating circumstances to exist beyond a reasonable doubt: (1) The offense of murder was committed against a peace officer while engaged in the performance of his official duties, Code Ann. § 27-2534.1 (b) (8); and (2). The offense of murder was committed by a person in the lawful custody of a peace officer. Code Ann. § 27-2534.1 (b) (9).

We find that the evidence factually supports the jury's finding of both aggravating circumstances beyond a reasonable doubt. Jackson v. Virginia, supra. Cf. *Stevens v. State,* supra.

The murder was of an officer engaged in the performance of his official duties. It occurred during the attempt to kill a fellow officer in an execution-type shooting which would have been fatal had the wounded officer not moved his head. In appellant's own words, the officers had been "nice to him." Furthermore, appellant made every effort to escape and avoid apprehension for his crime.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find the following similar cases listed in the appendix support the affirmance of the death penalty.

The thirteen cases in which the jury returned a death penalty support the death penalty in the instant case. All of the cases with the exception of *Jones* involved the deliberate killing of a police officer and thus show a jury's willingness throughout the state to give the death penalty under these circumstances. *Jones* similarly supports the sentence of death in that it involved the deliberate murder of a security guard. Thus, murderers of police officers are not "a

capriciously selected group of offenders." Gregg v. Georgia, 428 U. S. 153, 199 (96 SC 2909, 49 LE2d 859) (1976). In *one* of the cases which supports a sentence of death, mental disease or disturbance was offered in mitigation.

Appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. Hill, P. J., Marshall, Clarke, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 30, 1981.

*Katrina L. Breeding, August Siemon,* for appellant.

*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.

APPENDIX.

*Johnson v. State,* 226 Ga. 378 (174 SE2d 902) (1970); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979); *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979); *Lewis v. State,* 246 Ga. 101 (268 SE2d 915) (1980); *McClesky v. State,* 245 Ga. 108 (263 SE2d 146) (1980); *Stevens v. State,* 247 Ga. 698 (278 SE2d 398) (1981).