## A94A2755. WETTA v. THE STATE.
### (456 SE2d 696)

RUFFIN, Judge.

Gerald Broussard Wetta was convicted by a jury of simple battery and acquitted on charges of criminal trespass and battery. This appeal follows the denial of Wetta's motion for new trial.

Viewed in the light to support the jury's verdict, the evidence showed that Wetta and the victim were together at the victim's apartment for dinner when they got into an argument. The victim testified that after Wetta threw bottles of beer onto the floor and verbally abused her, she asked him to leave. When he refused, she called the "911" operator for assistance. During the victim's conversation with the dispatcher, Wetta agreed to go. However, after the victim hung up, Wetta began hitting and kicking her. He pinned her to the bed and thereafter unbuttoned and unzipped her jeans. As the victim managed to push Wetta away, the 911 emergency dispatcher telephoned the victim's apartment and Wetta answered. The jury heard the 911 recording of the victim's screams for help in the background. The victim testified that Wetta hung up the telephone and quickly left the apartment with a basket of his laundry. As Wetta was leaving, Officer Lewis of the Atlanta Police Department arrived to investigate the victim's 911 call. He testified that the victim's clothes were in disarray, her upper lip was red and swollen, and she was crying hysterically. The victim told Officer Lewis that Wetta had hit her in the face and rib cage with a closed fist. Officer Lewis observed that the victim's apartment was also in disarray: a cordless telephone was in pieces on the kitchen floor, a planter was broken, and some living room furniture was stained with what appeared to be wine. In addition, Mary Galphin testified that after Wetta and Officer Lewis left the victim's apartment, the victim called her. The victim was reportedly hysterical and told Galphin that Wetta had beaten her. The State also presented Wetta's former girl friend who testified concerning similar arguments, violence, and abusive behavior during her relationship with Wetta.

1. Wetta contends the trial court's charge to the jury on self-defense impermissibly shifted the burden of proof. We disagree.

Our review of the court's charge reveals a thorough initial instruction on the State's burden to prove every element of the charged offenses. Following its charge on the elements of the offense of battery, the court charged, "If you find the defendant's conduct was justified, this is a defense to the prosecution for committing any crime based on that conduct. A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against the other's imminent use of unlawful force. The

State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. To establish a plea of self-defense, the defendant must show, if circumstances were such as to excite fears of a reasonable person, that his safety is in danger. A mere apprehension of suspicion of harm is insufficient." The court later recharged the jury as to the elements of the offenses charged, and the defense of justification.

The charge "expressly placed the burden of proof on the State as to self-defense. Nevertheless, even assuming arguendo that a reasonable juror could potentially have interpreted some portion of the subject language as unconstitutionally burden-shifting, we find no prejudice to [Wetta's] substantial rights," given the court's thorough charge on the burden of proof in a criminal case. (Citation and punctuation omitted.) *McWhorter v. State*, 198 Ga. App. 493, 494 (3) (402 SE2d 60) (1991). Taken as a whole, the charge in this case could not be considered burden-shifting. See *Griffith v. State*, 169 Ga. App. 957 (315 SE2d 490) (1984).

2. Wetta enumerates as error the admission of similar transaction evidence by a former girl friend.

At the similar transaction hearing prior to trial, the former girl friend testified that five years before the incident in this case, she ended a four-year relationship with Wetta. In addition, Wetta underwent direct and cross-examination. After the examination and argument of counsel, the trial court found the State had met its burden of showing sufficient similarities between Wetta's prior violent conduct and the charged offenses and ruled the evidence admissible to show Wetta's bent of mind and course of conduct. Prior to the former girl friend's testimony at trial, the court fully instructed the jury to consider the evidence only for the limited purpose of establishing Wetta's bent of mind and course of conduct. We find no error in the court's determination that the State met its three-fold burden under *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991).

Wetta also argues in his brief that the former girl friend's testimony that Wetta objected to her having Black or Jewish friends impermissibly placed his character into evidence. He also argues that the former girl friend's mention of an unrelated incident of domestic violence inflamed the jury. We need not consider these claims because "'enumerations may not be enlarged by brief on appeal to cover issues not contained in the original enumeration.' [Cit.]" *Williams v. State*, 213 Ga. App. 70, 71 (4) (443 SE2d 696) (1994). In any event, these contentions are without merit. The trial court sustained Wetta's objections to the former girl friend's testimony as irrelevant and Wetta neither asked for curative instructions nor moved for a mistrial. Having failed to ask the court to take additional corrective measures, Wetta cannot now claim the testimony was prejudicial to him.

See *Woods v. State*, 212 Ga. App. 544 (1) (442 SE2d 22) (1994).

3. Wetta next contends that the court's exclusion of impeachment evidence concerning the victim's prior behavior was error because Wetta was not allowed to show the victim's motive to lie.

In a voir dire examination outside the presence of the jury, the trial court heard the testimony of Graham Greene who stated that he had an affair with the victim nine years before the incident in this case. He further stated that he gave the victim $10,000 because she threatened to tell his wife about their affair. However, he also testified that the victim subsequently repaid him $4,000 not long after she came to Atlanta. Greene's wife testified on voir dire that she called the victim and informed her that she knew of the affair.

Wetta's reliance on the Supreme Court's decision in *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), holding that "specific acts of violence by a victim against third persons shall be admissible where the defendant claims justification," id. at 407, is misplaced. Greene's testimony did not support Wetta's defense of justification. Instead, Wetta sought to attack the victim's credibility with evidence that she had an affair with a married man and then threatened to tell his wife unless he gave or loaned her money. "Although OCGA § 24-9-84 provides that a witness may be impeached by a showing of general bad character, specific acts of bad character are not admissible. [Cit.] The proffered testimony of [the Greenes] related solely to specific bad acts and not to the general bad character of the victim. Therefore, the testimony was not admissible." *Heaton v. State*, 214 Ga. App. 460, 461 (2) (448 SE2d 49) (1994).

4. Finally, Wetta challenges on hearsay grounds the admission of Mary Galphin's testimony concerning what the victim told her shortly after the incident. The court correctly admitted Galphin's statements as part of the res gestae. *Williams v. State*, 202 Ga. App. 82, 84 (413 SE2d 256) (1991); see also *Tucker v. State*, 243 Ga. 683 (3) (256 SE2d 365) (1979) (outcry made by a rape victim to one she immediately sought out within one hour from the commission of the crime was sufficiently contemporaneous to be a part of the res gestae and was therefore admissible). Moreover, the victim testified as to what she told Galphin, and any error in admitting the testimony was therefore harmless.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995 — 

*Maloy & Jenkins, W. Bruce Maloy*, for appellant.
*Paul L. Howard, Jr., Solicitor, Michael S. Moody, Deborah W.*

*Espy, Ingrid D. Hartman, Assistant Solicitors,* for appellee.