## S98P0719. HENRY v. THE STATE.
(507 SE2d 419)

HUNSTEIN, Justice.

George Russell Henry pled guilty to malice murder in the shoot-

ing death of Cobb County Police Officer Robert Ingram. The jury in his sentencing trial recommended a death sentence for the murder, finding two statutory aggravating circumstances: the offense of murder was committed against a peace officer while engaged in the performance of his official duties, OCGA § 17-10-30 (b) (8), and the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest. Id. at (b) (10). The trial court denied Henry's motions to set aside the guilty plea and for a new trial. Henry appeals, and we affirm.[1]

1. The evidence adduced at the sentencing trial showed that Henry was serving a burglary sentence at the Cobb County Correctional Institute when he told several other inmates shortly before his release that he would kill a police officer before he would return to jail again. Henry was released on July 1, 1993. He stayed with a friend until July 12 when he was asked to leave because his roommates suspected Henry was stealing from them. That evening Henry's friend dropped him off in the "Elizabeth" area of Cobb County. Henry, dressed in black, had a bag containing his possessions including a Davis Industries .380 semiautomatic pistol, which Henry's girl friend had purchased at his request during Henry's incarceration. Henry walked to a nearby industrial park and began looking for a business to burglarize.

At 12:39 a.m. on July 13, 1993, Cobb County Police Officer Robert Ingram was on a routine patrol in the Elizabeth area when he radioed his dispatcher that he was going to conduct an investigatory stop of a suspicious "white male dressed in all black carrying some type of a bag." Four minutes later, the dispatcher tried to contact Officer Ingram but received no response. Other officers arrived at the area within minutes but there was no sign of a patrol car. Officer Ingram's body was found shortly thereafter, only 14 minutes having elapsed since the time he first notified the dispatcher of the suspicious person. Officer Ingram's pistol was still snapped in its holster and Henry's wallet containing his identification was found a few feet from the body. Officer Ingram had been shot twice, once in the face and once in the back of the head. Expert testimony established that both shots were fired from a distance of less than one foot and that

---

[1] The crime occurred on July 13, 1993. Henry was indicted in Cobb County for malice murder on October 7, 1993. On October 8, 1993, the State filed a notice of intent to seek the death penalty. Henry pled guilty to murder October 31, 1994, the first day of his trial; a sentencing trial ensued and the jury sentenced Henry to death on November 12, 1994, with judgment entered on the sentence the same day. Henry's motion for new trial was filed December 5, 1994 and amended November 22, 1996. Henry filed a motion to set aside his guilty plea on November 22, 1996. The trial court denied both motions on December 3, 1997. Henry filed a notice of appeal to this Court on January 2, 1998, and the case was docketed February 4, 1998. The case was orally argued on May 18, 1998.

Officer Ingram was standing when shot in the face but was on the ground when shot in the back of the head. A security guard in the area testified that he heard two pistol shots fired four to seven seconds apart.

The police discovered the missing patrol car at a municipal golf course and arrested Henry who was seen, still dressed in black, talking on a nearby pay phone. Henry admitted that he had been at the murder scene but initially claimed that another person had used his pistol to kill the officer. Henry then led the police to places on the golf course where he had hidden some of his possessions, including the .380 pistol that was later determined to be the murder weapon. Henry was taken to the police station where he confessed to the killing. He stated that Officer Ingram approached him, requested his identification, and asked him what was in the bag. According to Henry, Officer Ingram's demeanor during this exchange was "pleasant and respectful." Henry pulled some of his possessions out of his bag to show the officer but realized that Officer Ingram had seen the ammunition for Henry's pistol. Realizing that a search would lead to his arrest for being a felon in possession of a firearm, Henry retrieved the weapon from its hiding place and shot Officer Ingram in the face; when the officer moved or moaned, Henry shot him again in the back of the head. Henry then gathered his possessions, accidentally dropping his wallet in the process, and fled the scene in the patrol car.

Although Henry pled guilty, we find that the evidence adduced at the sentencing trial was sufficient to enable any rational trier of fact both to find Henry guilty of malice murder and to find the two statutory aggravating circumstances beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 17-10-35 (c) (2).

2. Henry claims that the trial court erred by denying the motion to set aside his guilty plea. Henry asserts that when accepting the plea the trial court failed to determine the factual basis of the plea as required by Uniform Superior Court Rule 33.9. However, Henry did not move to set aside his guilty plea until two years and approximately twelve court terms had passed since his sentencing. See OCGA § 15-6-3 (11) (superior court of Cobb Judicial Circuit has six terms of court per year). It is well settled that when the term of court has expired in which a defendant was sentenced pursuant to a guilty plea the trial court lacks jurisdiction to allow the withdrawal of the plea. *Jarrett v. State*, 217 Ga. App. 627 (1) (458 SE2d 414) (1995). Henry's only available means to withdraw his guilty plea is through habeas corpus proceedings, id. at 628, and the trial court therefore properly denied Henry's motion.

In addition, Henry's guilty plea was accepted on the first day of trial, and a sentencing trial followed where the overwhelming evi-

dence summarized in Division 1 of this opinion was presented. Thus, even if Henry's motion had been timely filed and the trial court had been unaware of the factual basis when accepting the plea, we find that the subsequent evidence does not support the withdrawal of the plea to correct a "manifest injustice." USCR 33.12; *State v. Evans*, 265 Ga. 332 (3) (454 SE2d 468) (1995). See also *Wharton v. Henry*, 266 Ga. 557 (2) (469 SE2d 27) (1996) (evidence other than record created at plea hearing may be considered in manifest injustice analysis).

3. Henry claims that his two trial lawyers were laboring under a conflict of interest that violated his Sixth Amendment right to counsel. See *Cuyler v. Sullivan*, 446 U. S. 335 (IV) (B) (100 SC 1708, 64 LE2d 333) (1980). In order for Henry to prevail on this claim, he must show that an actual conflict of interest adversely affected his lawyers' performance. Id. The conflict of interest "must be palpable and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction [or sentence] which is supported by competent evidence." *Lamb v. State*, 267 Ga. 41, 42 (472 SE2d 683) (1996). According to Henry, the conflict of interest existed for two reasons: both of his lawyers served as hosts for a political fund raiser for the Cobb County district attorney about seven months before his trial; and both of his lawyers own an office building as tenants in common with an attorney who has contracted with the district attorney's office as a child support collector.

As to the fund raiser, the record from the hearing on Henry's motion for new trial established that Henry's trial counsel and sixteen other individuals co-hosted the one-time joint event for the district attorney and solicitor general of Cobb County and that Henry's trial counsel regularly contribute to various local political campaigns and attend fund raisers. No evidence was introduced to rebut trial counsel's testimony that their involvement in such events has no effect on the zealous representation of their clients. As to the second alleged conflict, the record established uncontrovertedly that the attorney with whom trial counsel are tenants in common has a completely separate practice.

Based on our examination of the record, we conclude that Henry's assertions of conflict are mere conjecture and are therefore insufficient to support a finding of actual conflict. Id.; *Hudson v. State*, 250 Ga. 479, 482 (1) (299 SE2d 531) (1983) (" 'actual conflict' . . . mean[s] more than the bare possibility that a conflict might have developed"). We find no violation of Henry's Sixth Amendment right to counsel.

4. Henry's challenge to the trial court's instruction to the jury

regarding life without parole[2] has been resolved adversely to him. *Bishop v. State*, 268 Ga. 286 (8) (486 SE2d 887) (1997); *Henry v. State*, 265 Ga. 732 (10) (c) (462 SE2d 737) (1995).

5. Henry claims that he received ineffective assistance of counsel at trial because counsel failed to prepare adequately the psychologist who gave expert testimony in mitigation and failed to object to improper cross-examination of the expert. In order to prevail on a claim of ineffective assistance of counsel, Henry must show that counsel's performance was deficient and that, but for counsel's deficient performance, there is a reasonable probability that the result of his trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). Henry's attorneys are afforded a strong presumption that their conduct fell within a wide range of reasonable professional conduct and that their significant decisions were made in the exercise of reasonable professional judgment. *Smith,* supra at 783.

(a) Henry's contention regarding the inadequate preparation of the psychologist revolves around the witness' inability at trial to recall a small portion of Henry's pretrial statement. At the motion for new trial hearing, lead trial counsel testified that both defense attorneys met with the psychologist several times before trial and "we went through everything from A to Z." At trial, the psychologist testified that he had reviewed the materials given him by the defense, including Henry's statements. The statements that Henry gave to the police are lengthy because they evolved over several hours of questioning; the audiotaped portion alone consumes approximately 90 pages of trial transcript. That the psychologist was unable to recall one of Henry's specific responses in the statement does not lead to the conclusion that trial counsel had been inadequate in their preparation of the witness. The record shows that the psychologist had thoroughly reviewed Henry's statements, and had been adequately prepared to testify. Trial counsel's preparation for trial was not deficient. Id.

(b) Henry claims that trial counsel failed to object to the State's improper cross-examination of the psychologist. On cross-examination, the prosecutor attempted to impeach the psychologist by questioning him about past specific instances of misconduct that had been referred to a professional review board. The psychologist responded

---

[2] The trial court's charge, which tracked the language of OCGA § 17-10-31.1 (d) (1), provided as follows:

Life without parole means that the defendant will be incarcerated for the remainder of his natural life and shall not be eligible for parole unless he is subsequently adjudicated to be innocent of the offense for which he was sentenced.

that each of the charges had been dismissed or "thrown out." The State also asked about an incident in a case in Fulton County that had resulted in a written rebuke by the trial judge in that case. Henry claims that his counsel should have objected to this line of questioning by the prosecutor because impeaching a witness with specific bad acts is not permissible. See OCGA § 24-9-84; *Wetta v. State*, 217 Ga. App. 128 (3) (456 SE2d 696) (1995).

At the motion for new trial hearing, lead trial counsel explained that although he and co-counsel discussed objecting to the prosecutor's questioning, they chose not to do so because:

> [w]e felt like [the prosecutor] was looking bad at that point. We felt like he was making a mistake by jumping on [the psychologist] like this, and that we were just going to give him enough rope to hang himself at that part of the trial. We felt that this was not a part of the trial that [the prosecutor] was making headway, that he was . . . picking on . . . a professional who was just doing his job. And . . . we just felt like he was hurting his own case.

Trial counsel's decision under these circumstances to raise no objection was a reasonable tactical decision which any competent attorney in a similar situation could have made. Accord *Hammond v. State*, 264 Ga. 879 (3) (a) (452 SE2d 745) (1995). That Henry now disagrees with the difficult tactical choices made by trial counsel during his trial does not require a finding that trial counsel's performance was deficient. Id. Henry's trial counsel was not ineffective. *Strickland*, supra.

6. Henry's death sentence was not imposed as the result of impermissible passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). The death sentence is also not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case, in that all involve the deliberate killing of a peace officer in the performance of his official duties, and thus show the willingness of juries to impose the death penalty under these circumstances.

*Judgment affirmed. Benham, C. J., Carley, Thompson, JJ., and Judge Walter J. Matthews concur. Fletcher, P. J., and Sears, J., concur specially. Hines, J., disqualified.*

## APPENDIX.

*Davis v. State*, 263 Ga. 5 (426 SE2d 844) (1993); *Hill v. State*, 250 Ga. 277 (295 SE2d 518) (1982); *Wallace v. State*, 248 Ga. 255 (282

SE2d 325) (1981); *Stevens v. State*, 247 Ga. 698 (278 SE2d 398) (1981); *McClesky v. State*, 245 Ga. 108 (263 SE2d 146) (1980); *Collier v. State*, 244 Ga. 553 (261 SE2d 364) (1979).

FLETCHER, Presiding Justice, concurring specially.

As I have stated before, a jury instruction that follows the language of O.C.G.A. § 17-10-31.1 (d) is confusing. A trial court would do better to charge only the correct definition of life without parole, "[l]ife without parole means that the defendant will be incarcerated for the remainder of his natural life and shall not be eligible for parole."[3] However, I cannot conclude that the additional confusing language constitutes reversible error. Therefore, I concur in the affirmance of the conviction and sentence.

I am authorized to state that Justice Sears joins in this special concurrence.

DECIDED SEPTEMBER 14, 1998 —
RECONSIDERATION DENIED OCTOBER 2, 1998.

*Edwin J. Wilson*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Jack E. Mallard, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Christopher L. Phillips, Assistant Attorney General*, for appellee.

---

[3] *Bishop v. State*, 268 Ga. 286, 297 (486 SE2d 887) (1997) (Fletcher, P. J., concurring specially).