## A05A1833. DAGUILAR v. THE STATE.
### (621 SE2d 846)

Johnson, Presiding Judge.

A jury found Richard Daguilar guilty of nine counts of armed robbery, two counts of attempted armed robbery, and fleeing and attempting to elude a police officer. Daguilar appeals, alleging the trial court abused its discretion in refusing to appoint substitute counsel, he received ineffective assistance of trial counsel, the trial court erred in refusing to grant his motion for continuance, and the trial court erred in advising him that his only options were to proceed pro se or allow appointed counsel to represent him at trial. We find no error and affirm Daguilar's convictions.

1. Daguilar contends the trial court erred in refusing his request to appoint substitute counsel. We find no error. The record shows that Daguilar was initially found ineligible for court-appointed counsel, but was subsequently appointed Edgar Callaway, a public defender. Although Daguilar repeatedly requested appointment of substitute counsel prior to his trial, he failed to articulate any valid reason for the removal of his appointed counsel. An indigent defendant is entitled to reasonably effective assistance of counsel, not counsel of his own choosing.[1] "If a defendant does not show good cause for discharging his appointed attorney, the trial court does not err in requiring him to choose between representation by that attorney and proceeding pro se."[2]

At the arraignment, Daguilar indicated he was not satisfied with his attorney and wanted a new public defender. Daguilar's only complaint was that he had not had enough contact with his attorney. However, the trial court explained that the case had been under investigation until the reindictment was handed out. The court advised Daguilar to consult with his attorney about the matter and reminded him that he had the opportunity to hire his own attorney if he chose to do so. The public defender noted that the public defender's office had not gotten much information to talk to Daguilar about

---

[1] See *Hickey v. State*, 259 Ga. App. 240, 243 (2) (a) (576 SE2d 628) (2003).
[2] Id.

because the case had been reindicted and discovery deadlines had just been set. In addition, trial counsel testified that not only had he met a few times with Daguilar, but public defender investigators had also met with Daguilar.

Approximately four months later, during a motions hearing, the trial court allowed Daguilar to again voice his grievances regarding his public defender. Daguilar raised the issue of a possible conflict because a public defender in the same office as his public defender had been representing his co-defendant. However, the trial court found that the conflict had been resolved. Daguilar also indicated he wanted copies of discovery and transcripts of any statements in the case. His attorney indicated he would copy the materials, and the trial court ordered that they be given to Daguilar by the following Monday. Daguilar indicated that he still wanted another public defender because he was "not confident" that he was receiving effective representation, but failed to give the court any specific reason for his lack of confidence. Once again, the trial court informed Daguilar of his right to hire his own attorney.

The following month, Daguilar's counsel argued a motion to sever the counts in the indictment. The only problem raised by Daguilar on that date was that he had requested his trial counsel to file a motion to suppress his statement. Trial counsel indicated that he had filed such a motion, but had withdrawn it after determining there was no legal basis for the motion. Once again, the trial court advised Daguilar of his right to hire his own counsel, noting that Daguilar's trial counsel was "good counsel, all right," and that he was not going to micromanage trial counsel's representation.

Three months later, at a status conference, Daguilar argued that his Sixth Amendment rights were being violated, but failed to enunciate any specific problem with trial counsel's representation. Daguilar stated that trial counsel had "not filed no [sic] motions for me." The trial court noted that trial counsel had filed motions and that the court had held exhaustive hearings on the motions filed. According to the trial court, trial counsel had been "most zealous" in arguing the motions. The trial court then admonished Daguilar: "I just think you want to choose your lawyer, and it doesn't work that way. Now, you can hire yourself a lawyer, if you choose to, that's still your right to do but you don't get to pick who gets appointed to you, no one does." The trial court informed Daguilar that he could file a motion regarding ineffective assistance of counsel, but added:

> I see no evidence, and there's never been any indices in this case whatsoever, that I've noted, and I've watched attentively. We've had huge discussions every time you come

about issues, and I've listened attentively right there, there's nothing here that justifies there being any change in counsel in this case.

Approximately eight months later, prior to jury selection, Daguilar again requested a new attorney, arguing that his appointed attorney "wasn't advocating correctly." The trial court noted:

Mr. Daguilar, as we've discussed on numerous occasions before, not just last week, but on numerous occasions before, the Court doesn't allow — you're not allowed to pick the person that you want. My job is to be sure that you have adequate and appropriate counsel. Now, we've made inquiries on multiple occasions about the questions that you've had with regard to his representation, and the Court has not found any basis for Mr. Callaway not — to have found that he is providing you or didn't provide you with competent and good counsel as it relates to your representation. . . .

It is clear from the transcripts in this case that, contrary to Daguilar's argument, the trial court considered his claims regarding substitution of counsel. However, Daguilar never showed good cause for his appointed counsel to be removed. The trial court did not err in refusing to appoint Daguilar substitute counsel.

2. Daguilar contends he was denied effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense.[3] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[4] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[5] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result.[6]

Daguilar argues that he did not receive effective assistance of trial counsel because trial counsel failed to timely communicate with

---

[3] *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001).

[4] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[5] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[6] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

him and trial counsel attempted to simultaneously represent two adverse co-defendants. There is no evidence in the record to support either assertion.

The only evidence supporting Daguilar's failure to timely communicate argument is his self-serving statement that he did not know he had an attorney at the time he made a statement to police. However, trial counsel testified that while he had not met with Daguilar prior to the statement, investigators with the public defender's office had met with Daguilar prior to his statement. The trial court was authorized to disbelieve Daguilar.[7] Trial counsel did not provide ineffective assistance of counsel in this regard.

As for Daguilar's argument regarding the alleged conflict of interest, the record shows that once it was clear that a conflict existed based on the state's evidence, the public defender representing Daguilar's co-defendant withdrew from representing the co-defendant and a conflict attorney was appointed. In order for a criminal defendant to prevail on a claim that his attorney was ineffective due to a conflict of interest, he must show that an actual conflict of interest adversely affected his lawyer's performance.[8] The conflict of interest "must be palpable and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction . . . which is supported by competent evidence."[9] Here, Daguilar can show nothing other than the fact that the public defender's office represented both him and his co-defendant prior to arraignment. As soon as the conflict was recognized, the public defender's office withdrew from representing Daguilar's co-defendant. Daguilar's assertions of conflict are mere conjecture and are insufficient to support a finding of actual conflict. We find no violation of Daguilar's Sixth Amendment right to counsel.

3. Daguilar claims the trial court erred by refusing to continue his trial so he could obtain another attorney and prepare a defense. A ruling on a motion for continuance is within the trial court's sound discretion and will not be disturbed absent an abuse of that discretion.[10] It follows from our conclusions in Divisions 1 and 2, supra, that the trial court did not abuse its discretion. Moreover, Daguilar was present when it was determined that the case would proceed to trial in April 2005. And, the trial court repeatedly informed Daguilar throughout the course of the case that he needed to hire his own attorney if he was not happy with the appointed attorney. Prior to

---

[7] See *Hickey*, supra.

[8] See *Henry v. State*, 269 Ga. 851, 854 (3) (507 SE2d 419) (1998).

[9] (Citation and punctuation omitted.) Id.

[10] *Greene v. State*, 274 Ga. 220, 221 (3) (552 SE2d 834) (2001).

trial, the trial court listened to each of Daguilar's reasons for needing a continuance and addressed each of them. We find no abuse of discretion.

4. Daguilar maintains the trial court erred by failing to advise him that he could allow standby counsel to conduct portions of the trial. Specifically, Daguilar argues that the trial court only gave him the option of proceeding to trial with appointed counsel or representing himself. He claims that the trial court did not inform him that he could have standby counsel conduct portions of the trial or actively assist him in front of the jury. We find no merit to this argument.

After Daguilar exercised his right to self-representation, the trial court appointed the public defender assigned to the case to advise Daguilar regarding trial strategy, rules of evidence and procedure. The appointed counsel informed the court of his actions as advisor, and the trial court advised Daguilar that he could whisper with and write notes to the public defender during the case.

Contrary to Daguilar's argument, the public defender, as Daguilar's advisor, could not conduct portions of the trial. The Sixth Amendment does not afford the defendant the hybrid right to simultaneously represent himself and be represented by counsel.[11] While the trial court properly allowed the appointed public defender to assist Daguilar, and even gave them time to practice whispering, it would have been improper for the trial court to allow the attorney, who was acting solely as an advisor, to conduct aspects of the trial after Daguilar exercised his right of self-representation.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED OCTOBER 6, 2005.

*Paul M. Ledbetter, Jr.*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Melanie B. McCrorey, Assistant District Attorney*, for appellee.

---

[11] *Cargill v. State*, 255 Ga. 616, 622-623 (3) (340 SE2d 891) (1986); *Vick v. State*, 237 Ga. App. 762, 763 (2) (516 SE2d 815) (1999).