[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16552
_____

D.C. Docket No. 1:06-cv-02470-WBH

GEORGE RUSSELL HENRY,

Petitioner-Appellant,

versus

WARDEN, GEORGIA DIAGNOSTIC PRISON,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 2, 2014)

Before HULL, WILSON, and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

George Russell Henry, a Georgia prisoner sentenced to death after pleading

guilty to the murder of a police officer, Robert Ingram, appeals the denial of his

petition for a writ of habeas corpus. Henry argues that he was deprived of a fair

trial when the trial court excused a juror from deliberations about his sentence. Henry alleges that the juror was a holdout from voting to sentence him to death. The foreman of the jury informed the trial court that the juror was impeding deliberations, and the juror, who was pregnant, confirmed that fact. After Henry's counsel failed to raise an issue of juror misconduct on appeal, the state courts, on collateral review, refused to consider it. Henry argues that we should excuse his failure to raise the issue on direct appeal because he was deprived of the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the Constitution. We affirm the denial of Henry's petition.

## I. BACKGROUND

Police Officer Robert Ingram of Cobb County, Georgia, was on routine patrol when he saw a "suspicious white male dressed in all black carrying some type of a bag." *Henry v. State*, 507 S.E.2d 419, 420 (Ga. 1998) (internal quotation marks omitted). Officer Ingram approached the man, George Russell Henry, to conduct an investigatory stop. *Id*. at 420–21. Officer Ingram asked Henry what his bag contained, and Henry began to show him some of its contents. *Id.* at 421. But Henry, a convicted felon, was carrying a pistol because he had been searching for businesses to burgle before Officer Ingram stopped him. *Id.* at 420. When Henry realized that Officer Ingram had seen ammunition for the pistol in his bag, Henry feared that a search could lead to his arrest for being a felon in possession of a

2

firearm. *Id.* at 421. So Henry murdered Officer Ingram by shooting him twice in the head. *Id.*

Henry eventually confessed to the murder of Officer Ingram and pleaded guilty on the first day of his trial. *Id.* The trial court then held a sentencing phase. *Id.* During the first day of jury deliberations, one of the jurors, Beth Hill, had severe abdominal pain and went to the hospital. Hill had learned shortly before trial that she was pregnant, and at the hospital, the doctor informed her that she might be pregnant with twins. The doctor then cleared her to return to the jury deliberations, which the trial court had suspended in her absence. After deliberations began the following day, the jury foreman sent a note to the court that stated Hill wished to be released from the jury out of concern for her child and that the other jurors felt that they could not freely discuss the case in her presence because they feared upsetting Hill, who had been extremely emotional throughout deliberations, and they feared endangering her child.

The trial court called the jury foreman to discuss the note. The foreman explained that an incident in Hill's past had contributed to her emotional state. Both the court and counsel were already aware that, as a child, Hill had witnessed a multiple murder at her school. Hill stated during voir dire that she had difficulty dealing with violent images as a result of her experience. At one point during the trial, Hill became so upset, after viewing a video of the crime scene, that the trial

3

court recessed for her to compose herself. The foreman explained to the court that, when Hill became upset during deliberations, she would become concerned for the welfare of her child and that she would begin to have stomach pain. He stated that Hill had approached him and told him that she wanted the court to remove her from the jury and that both Hill and the rest of the jury believed her removal was necessary.

The court asked whether Hill's presence would impede a free and open discussion among the members of the jury if she were to remain, and the foreman stated that it would. He also confirmed that Hill's condition had already impeded an open discussion in the jury room.

The trial court called Hill next. The court asked Hill why she had requested that the court remove her from the jury. Hill responded that it was a combination of her traumatic past and her pregnancy: "[W]ith the combination of the two, . . . I just feel that I can't handle it anymore. . . . I've tried, but I don't feel I can." She also explained that the other jurors were afraid to voice their opinions out of fear that it would upset her, and when the court asked whether she believed that her presence was impeding deliberations, she replied, "I know it is, yes." She explained that the jury was concerned about her and the safety of her child. The court also asked Hill if fear for her child prevented her from "becoming an open

4

participant" in deliberations. Hill responded, "Probably, yes," and then, "Yes, it does."

After hearing from counsel for both sides, the trial court excused Hill from the jury. The court made a finding of fact that, with Hill on the jury, "the jury [could ]not continue to freely discuss this case and have an open, unfettered discussion of ideas, which is required and which is desired, of course, in all jury deliberative processes." The court replaced Hill with an alternate juror and directed Hill to the judge's chambers to collect payment for her service. Hill never protested her removal nor asked to speak to the judge alone. After her excusal, the jury voted to sentence Henry to death. *See Henry*, 507 S.E.2d at 420 n.1.

After his sentencing, Henry's counsel moved for investigative assistance, including funds to interview jurors, but the trial court denied the motion. Henry next filed a motion for new trial and included a one-sentence argument alleging that the trial court erred when it excused Hill from deliberations. The trial court denied the motion.

In his appeal to the Supreme Court of Georgia, Henry failed to raise a claim that the excusal of the pregnant juror deprived him of a fair trial in violation of the Constitution. The Supreme Court of Georgia affirmed Henry's sentence, *Henry*, 507 S.E.2d at 423, and the Supreme Court of the United States denied his petition

for a writ of certiorari, *Henry v. Georgia*, 526 U.S. 1118, 119 S. Ct. 1768 (1999),

*reh'g denied*, 527 U.S. 1054, 120 S. Ct. 15 (1999).

Henry later filed a state petition for a writ of habeas corpus, in which he alleged a claim of juror misconduct. Henry contended that the jury conspired to remove Hill because she was a holdout in favor of a life sentence and that this misconduct deprived him of a fair and reliable sentencing trial in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments when the trial court removed Hill from the jury. He also contended that ineffective assistance of counsel provided cause and prejudice to overcome the procedural default of failing to raise a claim of juror misconduct on appeal. The state court denied Henry's petition and ruled that his claim of juror misconduct was procedurally defaulted because he did not raise it on direct appeal and could not establish cause and prejudice to overcome the default. Henry then applied to the Supreme Court of Georgia for a certificate of probable cause to appeal, but the court denied his application. He also filed a petition for a writ of certiorari in the Supreme Court of the United States, which denied his petition. *Henry v. Terry*, 549 U.S. 909, 127 S. Ct. 241 (2006).

Henry then filed a federal petition for a writ of habeas corpus in the district court and alleged several claims for relief, including a claim of juror misconduct. He requested discovery and an evidentiary hearing for his claim of juror

6

misconduct, which the district court denied. The district court then denied his petition and ruled that his claim of juror misconduct was procedurally defaulted. The district court granted Henry a certificate of appealability for his claim of juror misconduct and the related orders that denied Henry's requests for discovery and an evidentiary hearing.

## II. STANDARD OF REVIEW

We review *de novo* the determination of a district court that a habeas petitioner is procedurally barred from raising a claim in federal court. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004).

## III. DISCUSSION

The federal doctrine of procedural default may bar a district court from reviewing a petitioner's claim if a state court rejected it on a state procedural ground. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). The state procedural ruling ordinarily provides an "adequate and independent" ground to deny relief under state law, which bars federal review of the underlying claim. *See Marek v. Singletary*, 62 F.3d 1295, 1301 (11th Cir. 1995). But if a claim is procedurally defaulted, a federal court may still address the merits of the claim if the petitioner establishes cause for the default and actual prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 87–88, 97 S. Ct. 2497, 2506–07 (1977). To establish cause, the petitioner must identify "some objective factor external to the defense" that impeded his

7

ability to raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). We have determined that a claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause. *See Hill v. Jones*, 81 F.3d 1015, 1031 (11th Cir. 1996).

Henry does not contest that the procedural bar applied by the state court provided an adequate and independent state ground to deny him relief on his claim of juror misconduct. Henry instead argues that he can establish cause and prejudice to overcome that procedural bar. We disagree.

Henry argues that he can establish cause because his appellate counsel was ineffective when he failed to investigate and raise the claim of juror misconduct on appeal, but this argument fails. Appellate counsel for Henry faced a record that consisted of a pregnant juror who witnessed a traumatic event as a child and was having difficulty maintaining her composure during trial and deliberations, who experienced severe stomach cramps during deliberations and was taken to a hospital where she learned that she could be pregnant with twins, and who informed the trial judge that she was impeding deliberations. The record also reflected statements by the foreman that Hill was impeding deliberations. And after the trial court replaced Hill with an alternate juror, post-sentencing counsel moved for funds to interview the jurors, but the trial court denied the motion. In the absence of evidence to suggest that anything improper took place, a failure to

8

investigate and raise a claim of juror misconduct does not fall "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984). After a thorough review of this record, we conclude that counsel for Henry acted in an objectively reasonable manner when he decided not to investigate or raise a claim of juror misconduct on direct appeal. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65; *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). Ineffective assistance of counsel cannot act as cause to excuse Henry's default of his claim.

Henry also argues in his reply brief that he can establish cause because he was under no obligation to raise the claim earlier without evidence that would have alerted his appellate counsel of his claim of juror misconduct, which is sufficient to establish cause under Georgia law, *see Turpin v. Todd*, 493 S.E.2d 900, 907 (Ga. 1997), but this argument fails for at least two reasons. First, Henry did not adequately raise this argument in his initial brief. *United States v. Jernigan*, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003). Second, even if he had adequately raised it, he points us to no federal precedent to support his argument; instead, he points only to Georgia law. *See Turpin*, 493 S.E.2d at 907. This argument does not establish cause to overcome the procedural default of Henry's claim.

Although his failure to establish cause for the procedural default alone renders Henry's claim unreviewable, Henry also cannot establish prejudice. Henry

9

argues that he would have a reasonable probability of success on appeal as to his claim of juror misconduct, but both former and current provisions of the Georgia Evidence Code suggest otherwise. *See* Ga. Code § 9-10-9 (repealed 2013); *id.* § 17-9-41 (repealed 2013); *id.* § 24-6-606. Georgia law bars the admission of evidence regarding juror deliberations, and Henry concedes that this evidence would be necessary to prove his claim. Georgia evidentiary rules govern our consideration of prejudice, but Federal Rule of Evidence 606(b) would require the same result. *See* Fed. R. Evid. 606(b). Because the district court would be unable to consider the evidence that Henry seeks to offer, Henry cannot establish prejudice.

Our dissenting colleague contends that two different analyses of cause and prejudice apply to Henry's appeal—one to determine whether he may receive an evidentiary hearing about his procedural default and another to determine whether he may overcome his procedural default—but we disagree. No analysis of cause and prejudice applies to determine whether a petitioner is entitled to an evidentiary hearing. Although a standard for cause and prejudice applied to petitioners seeking an evidentiary hearing who were not diligent and failed to develop the factual basis of their substantive claims in state court before the Antiterrorism and Effective Death Penalty Act, *see Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715 (1992), that standard is no longer the law. Instead, the Act now bars evidentiary hearings about the claims raised by non-diligent petitioners unless they can satisfy

10

its more exacting standard. 28 U.S.C. § 2254(e)(2); *see also Williams v. Taylor*, 529 U.S. 420, 433, 120 S. Ct. 1479, 1489 (2000) ("[I]n requiring that prisoners who have not been diligent satisfy § 2254(e)(2)'s provisions rather than show cause and prejudice, . . . Congress raised the bar *Keeney* imposed on prisoners who were not diligent in state-court proceedings.").

But this change in the law is irrelevant to whether the district court should have granted Henry an evidentiary hearing on cause and prejudice. When a petitioner asks for an evidentiary hearing on cause and prejudice, neither section 2254(e)(2) nor the standard of cause and prejudice that it replaced apply. *See Sibley v. Culliver*, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) ("The term 'claim' [in section 2254(e)(2)] appears to refer to the substantive claim for relief upon which the petition for habeas corpus is based."); *Cristin v. Brennan*, 281 F.3d 404, 412–13 (3d Cir. 2002). When a petitioner has requested an evidentiary hearing on the procedural default of a substantive claim, we need ask only whether the district court abused its discretion when it denied an evidentiary hearing on that issue. "[T]he decision to grant . . . a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468, 127 S. Ct. 1933, 1937 (2007); *see also Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010) (reviewing for abuse of discretion the decision of a district court to deny the petitioner's request for an evidentiary hearing to establish facts to overcome procedural default); *Kelley v.*

11

*Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1333 (11th Cir. 2004) (reviewing for abuse of discretion the decision of a district court to deny an evidentiary hearing on a substantive claim).

Our dissenting colleague would grant Henry an evidentiary hearing on cause and prejudice even though Henry asked for that hearing—if at all—in one footnote before the district court, and on appeal, Henry failed to mention this issue in his initial brief. That failure waived the issue. *See United States v. Britt*, 437 F.3d 1103, 1104 (11th Cir. 2006) ("[We] declin[e] to consider issues not timely raised in a party's initial brief."); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court." (quoting *United States v. Coy*, 19 F.3d 629, 632 n. 7 (11th Cir. 1994) (alteration omitted))). And when Henry raised the issue in his reply brief, he failed to explain what evidence he would present at a hearing or how his evidence would differ from the evidence he presented in the state court on collateral review.

In any event, the district court did not abuse its discretion when it denied Henry an evidentiary hearing either on cause and prejudice to overcome his procedural default or on the merits of his claim of juror misconduct. Henry failed to proffer any new evidence about cause and prejudice in the district court, and the record established that the state court had already allowed him to present evidence

12

on the cause that he alleges, ineffective assistance of counsel for failure to investigate and raise the claim of juror misconduct. Henry's appellate counsel testified at the evidentiary hearing in state court, and his appellate counsel and post-trial counsel both provided affidavit testimony. Henry has never explained what other evidence he would have presented to the district court on the effectiveness of his counsel. And Henry is not entitled to an evidentiary hearing on the merits of his claim of juror misconduct because he procedurally defaulted that claim.

We cannot agree with our dissenting colleague that Henry deserves another evidentiary hearing—this time in federal court. Our dissenting colleague does not explain how the district court abused its discretion when it declined to hold an evidentiary hearing to determine whether cause and prejudice existed. We have never held that the denial of an evidentiary hearing by a district court was an abuse of discretion when the petitioner, like Henry, was granted a full and fair hearing on the issue in state court. *See, e.g.*, *Williams v. Allen*, 542 F.3d 1326, 1347–48 (11th Cir. 2008). And a hearing—whether on cause and prejudice or on the merits— would not "enable [Henry] to prove the petition's factual allegations, which, if true, would entitle [him] to federal habeas relief." *Schriro*, 550 U.S. at 474, 127 S. Ct. at 1940.

13

## IV. CONCLUSION

We **AFFIRM** the denial of Henry's petition for a writ of habeas corpus.

WILSON, Circuit Judge, dissenting:

I cannot say that Henry should prevail on the merits of his juror misconduct claim, or if it is procedurally barred. I can unequivocally say, however, that he has not been afforded a sufficient opportunity to show cause and prejudice to overcome default of his claim. I would vacate the district court's opinion and remand for discovery and an evidentiary hearing where Henry can have the occasion to show cause and prejudice.

Henry's counsel did not raise a juror misconduct claim on direct appeal. The state habeas court granted Respondent's motion in limine excluding Henry's investigative team's affidavits as impermissible evidence, then concluded that his juror misconduct claim had been procedurally defaulted and did not reach the merits.[1] Therefore, in order to overcome the procedural default, Henry must show

---

[1] It is important to note that Henry has not been afforded a full and fair hearing on the merits of his juror misconduct claim. In *Williams v. Allen*, we examined whether a petitioner "was denied a full and fair hearing within the meaning of *Townsend*" *v. Sain*, 372 U.S. 293, 313, 83 S. Ct. 745, 757 (1963). 542 F.3d 1326, 1347 (11th Cir. 2008). We listed six circumstances in which a hearing is not full and fair, and the first occurs when "the merits of the factual dispute were not resolved in the state court hearing." *Williams*, 542 F.3d at 1347 (internal quotation marks omitted). Indeed, the state court hearing here is distinguishable from the hearing in *Williams* in ways beyond the fact that the state court here did not reach the merits. Although the state habeas court accepted the juror affidavits Henry had obtained and testimony from investigators who had interviewed jurors as proffer, Henry did not have the opportunity to fully develop his evidence through use of the compulsory process or cross-examination. Further, in *Williams*, although the trial judge interrupted testimony, questioned witnesses, interjected his own opinion, and arguably made some insensitive comments, "the court found no indication that this conduct prevented Williams from developing evidence necessary to adjudicate his claims." 542 F.3d at 1347. Henry, by contrast, was clearly not afforded the live hearing in front of a judge described in *Williams*, nor did he have the opportunity to directly interview each juror, relevant third parties including bailiffs, or the opportunity to cross-examine.

15

cause and prejudice.  In order to do this, Henry requested an evidentiary hearing to strengthen his evidence—an opportunity to subpoena each of the jurors and examine them under oath.  Contrary to the Majority's characterization, Henry clearly requested an evidentiary hearing on his juror misconduct claim in his petition before the district court and before this court.[2]  Henry also seeks discovery from third party observers, including the bailiffs.

The district court, quoting *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1335 (11th Cir. 2004), ultimately concluded that:

> Where, as here, a state hearing was held,
>
> a habeas petitioner is "entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11 (1992).[3]

---

[2] In his original habeas petition filed in 2007, Henry asked that the district court "afford him a reasonable opportunity to conduct discovery, [and] that [the district court] conduct an evidentiary hearing on the claim."  In Henry's brief filed in support of his habeas petition before the district court in 2009, cited by the Majority, Henry specifically argues that cause and prejudice exist excusing the failure to raise his juror misconduct claim, citing *Williams v. Taylor*, 529 U.S. 420, 432, 120 S. Ct. 1479, 1487 (2000), for the correct proposition that he is "entitled to an evidentiary hearing regarding the habeas court's default finding."  To the extent that the Majority suggests Henry's footnote explicitly requesting an evidentiary hearing and citing *Williams* is insufficient, I disagree.  Further, on appeal, the final section of Henry's initial brief is entitled **"An Evidentiary Hearing Is Necessary to Resolve Conflicts in the Evidence; a Decision Cannot Be Rendered on the Basis of the Proffer Alone."**

[3] Contrary to the Majority's treatment, there are actually two sets of cause and prejudice analyses—one determines whether Henry is entitled to an evidentiary hearing, and the second involves whether Henry overcomes the procedural default of his juror misconduct claim.  In determining whether or not a petitioner is entitled to a hearing, the Supreme Court and our court have clearly articulated two different tests, one where a petitioner has been diligent in developing his claim and one where he has not.  *See Williams*, 529 U.S. at 435, 120 S. Ct. at 1489 ("To be sure, in requiring that prisoners who have not been diligent satisfy § 2254(e)(2)'s provisions rather than show cause and prejudice . . . Congress raised the bar *Keeney* imposed on prisoners who were *not diligent* in state-court proceedings." (emphasis added)); *Kelley*, 377 F.3d at 1335.

16

In discussing whether Henry makes this cause and prejudice showing, the district court did not address cause because it decided that there would be no prejudice.  I believe that there was cause for Henry's failure to develop the factual record below and disagree with the district court's finding that there was no prejudice.  Cause can be shown either by the trial court's denial of Henry's counsel's request for funding to pursue the claim, or by his claim of ineffective assistance of counsel.[4]  Further, to the extent that the Majority is suggesting that Henry cannot show cause because he had a state court hearing on his juror misconduct claim, we disagree that it was a full and fair hearing on the merits.  *See* FN 1.  At every stage, Henry has sought to develop the evidentiary record in order to prove his juror misconduct claim, and at every stage, some obstacle has prevented him from developing this record fully to permit fair consideration of his claim.

---

*Williams* clearly indicates that diligence is shown by the same actions that demonstrate cause, such as whether a petitioner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.  529 U.S. at 435, 120 S. Ct. at 1490.  I agree with the district court that Henry was diligent and that § 2254(e)(2) is therefore inapplicable.

[4] Henry argues that there was no evidence to alert counsel to juror misconduct, which can establish cause.  *See Turpin v. Todd*, 493 S.E.2d 900, 907 (Ga. 1997).  Alternatively, Henry argues that his appellate counsel was ineffective for failure to pursue the juror misconduct claim. *See Holladay v. Haley*, 209 F.3d 1243, 1254 (11th Cir. 2000) ("Constitutionally ineffective assistance of counsel can constitute cause.").  I disagree with the Majority's view that Henry did not adequately raise these alternative bases for showing cause.

17

Regarding prejudice, the district court gave two reasons for concluding that there was no prejudice, and an additional reason not to be concerned even if there was.  First, the district court concluded that Henry was bound by its determination in an earlier order that the evidence Henry sought to develop was inadmissible.  In its January 30, 2009 order, the district court analyzed the sources of evidence that Henry wished to develop and concluded that they would be, for the most part, barred by Federal Rule of Evidence 606(b) and the equivalent Georgia Rule, which it determined were materially similar.  Second, the district court found that Henry failed to comply with its request to "set forth with particularity what evidence [he] intends to present at the hearing, which witnesses would present that evidence, and exactly what those witnesses would say."

Upon review, however, it seems premature to conclude that all potential evidence of an alleged constitutional violation is inadmissible because some evidence, which Henry has not had a sufficient opportunity to gather, may be precluded by either Georgia evidence rules or Rule 606(b).[5]  It is not even clear that the jurors' testimony will be excluded for several reasons.  First, in *Tanner v. United States,* the Supreme Court reasoned that precluding juror testimony of the circumstances then before the court (a juror's use of alcohol) was not a

---

[5] Similarly, it seems premature to require Henry to describe, with particularity, what witnesses, whom he has not yet subpoenaed, will say at a hypothetical hearing.

18

constitutional violation because there were other mechanisms to adequately protect the defendant's rights, such as voir dire and non-jurors observing the particular juror's drunkenness in court. 483 U.S. 107, 126–27, 107 S. Ct. 2739, 2750–51 (1987). However, as Henry argues, unlike the jurors in *Tanner*, the alleged juror misconduct in this case was neither easily observable by outsiders nor likely to be reported by the jurors at the time. Further, *Tanner* was a fraud case, whereas the Supreme Court recognizes the heightened constitutional concerns in capital cases. *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 994, 111 S. Ct. 2680, 2701 ("Proportionality review is one of several respects in which we have held that 'death is different' and have imposed protections that the Constitution nowhere else provides."). Second, the text of Rule 606(b) decidedly does not include allegedly misleading communications between the jury and the judge, or the allegedly conspiratorial comments that jurors made at a pizza shop while juror Hill was in the hospital. *See* Fed. R. Evid. 606(b). Third, if upon development of the factual record, otherwise inadmissible evidence proves to be the only means by which Henry's constitutional claim can be heard, the court will have to ensure that the rules are not applied in a manner that violates Henry's constitutional rights. *Cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324–26, 129 S. Ct. 2527, 2540–41 (2009) (finding that the protection of the Confrontation Clause cannot be disregarded despite petitioner's ability to subpoena the experts); *Waldrip v.*

19

*Humphrey*, 532 F. App'x 878, 891 (11th Cir. 2013) (per curiam) (Barkett, J.,

concurring) ("A state court cannot use its evidentiary rules to deny an individual

access to a fundamental constitutional right.").

Further, the district court's conclusion that Henry was not prejudiced by his

lack of a hearing is circular. After denying his request for an evidentiary hearing,

the district court reasoned that no prejudice could result from this decision because

the court would "carefully consider[ ] all of the evidence that Petitioner proffered

in state court." This did not, however, cure any prejudice from Henry's lack of

development of the record. Indeed, Henry is seeking an evidentiary hearing

precisely to increase the weight of the evidence suggesting that there was juror

misconduct. Ultimately, it was the gaps and inconsistencies in Henry's proffered

evidence that led the district court to deny his petition because his claim would fail

on the merits. The fact that he failed on the merits because he lacked evidence

proves precisely, contrary to the district court's holding, that he was prejudiced by

the lack of factual development below. Thus, he showed the cause and prejudice

necessary to secure an evidentiary hearing.[6] In short, the district court's two

reasons for concluding that there was no prejudice due to the lack of factual

---

[6] It is evident, as Henry argues, that the district court's decision was motivated by the evidentiary gaps and inconsistencies in his claim. "While Petitioner's evidence indicates that [Hill] was a lone holdout against imposing the death penalty, it does not establish with any degree of confidence that [Hill's] holdout status was the motivating factor behind the decision of the foreman to write the note to the judge about [Hill] or to testify that [Hill] was impeding deliberations as opposed to the equally likely possibility that the foreman was motivated by concern for [Hill's] well-being . . . as well as the belief that [Hill] was not a capable juror."

20

development are unpersuasive, and its purported cure—considering the evidence—

did not actually eliminate the remaining prejudice.  To the contrary, it was the

incomplete and inconsistent evidence that proved fatal. [7]

The prejudice flowing from the lack of factual development before the state

habeas court is apparent in the district court's recognition that Henry's

constitutional juror misconduct claim is "somewhat compelling."  Despite the fact

---

[7] Accordingly, the Majority's alternative position that, even if Henry was diligent, he must show that the district court abused its discretion, is non-responsive.  It is clear that if Henry was diligent, he must show cause and prejudice for failing to develop the evidentiary record.  *See Kelley*, 377 F.3d at 1335; *see also Williams*, 529 U.S. at 435, 120 S. Ct. at 1489 (explaining that § 2254(e)(2) applies only to non-diligent petitioners).  The Majority's citation to *Sibley v. Culliver*, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) is inapposite.  In *Sibley,* this court reiterated that § 2254(e) applies only where a petitioner has failed to develop the factual basis of a claim in state court through lack of diligence, and concludes that petitioner's claim of actual innocence is not a "claim" within the meaning of § 2254(e).  *Id.*  It does not indicate that the standard of cause and prejudice for diligent petitioners to obtain an evidentiary hearing articulated in *Kelley* and *Williams* no longer applies.  Based on this precedent, I do not see how the Majority can conclude that even if diligent, Henry did not need to establish cause and prejudice to secure an evidentiary hearing.  One is left wondering, if the Majority is correct that cause and prejudice no longer applies, what test should a district court apply for determining whether a petitioner is entitled to a hearing to develop evidence on cause and prejudice to overcome procedural default?  The Majority says that test is abuse of discretion, but that is a standard of review, not a test for district courts to apply.  Thus, the test that applies, regardless of whether the hearing is to show a substantive claim or to overcome default of that claim, is still cause and prejudice.  The Majority cites *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933 (2007), for the proposition that petitioners seeking an evidentiary hearing must show abuse of discretion rather than cause and prejudice for failing to develop the factual record.  But *Schriro* simply confirms that when reviewing a district court's decision not to grant an evidentiary hearing, appellate courts must *review* for abuse of discretion.  *See id.* at 468, 127 S. Ct. at 1937 (applying an abuse of discretion standard in reviewing whether the district court erred in denying the petitioner's request for an evidentiary hearing); *Kelly*, 377 F.3d at 1333–42 (applying the abuse of discretion standard in reviewing the district court's application of the cause and prejudice test).  Instead of eliminating the cause and prejudice test, *Schriro* merely clarified that proving the prejudice prong will be more difficult in the wake of AEDPA because AEDPA makes it more difficult for petitioners to prevail on the merits.  *See* 550 U.S. at 473, 127 S. Ct. at 1939 (explaining that the "basic rule" for granting an evidentiary hearing "has not changed" but that "AEDPA, however, changed the standards for granting habeas relief").  Moreover, the Majority gives no reason to support its assertion that the district court did not abuse its discretion.

that Henry did not have the benefit of discovery, subpoena power, or compulsory process, his evidence created a close constitutional call.  Unlike the district court, which at least thoroughly considered the insufficiently developed evidence as proffer, the Majority completely ignores the evidence indicating a potential constitutional violation.  And there is no doubt, as the Respondent conceded at oral argument, that if Henry could prove that Hill's refusal to impose the death penalty was a factor in her dismissal, the juror misconduct leading to her dismissal constitutes a violation of Henry's due process rights.  *See Green v. Zant*, 715 F.2d 551, 556 (11th Cir. 1983) (confronting the precise issue of whether a juror had been impermissibly dismissed due to her refusal to impose the death penalty and concluding that "[c]ertainly it would violate a criminal defendant's due process rights were a court to dismiss a juror because of her refusal to impose the death penalty in a given case").  *Green* is strikingly analogous, as the factual findings there were also incomplete, prompting the court to explain that "[w]here facts necessary to support a constitutional claim have not been adequately developed in the state courts . . . a federal evidentiary hearing is necessary."  *Id.* at 557.

Respondent has tried to distinguish *Green*, noting that in that case, the juror was excused without speaking directly with the judge.  However, although Hill was brought in to speak with the judge in this case, there is evidence that the judge was misled and lacked critical information at the time of Hill's dismissal.

22

Although the Majority omits this evidence, Hill specifically declared in her affidavit that she could not share the full truth when she spoke to the trial judge:

> When I was called into the courtroom, I was surprised. It was full of people, the judge, the lawyers and others. I was confused by this because I thought I would be meeting privately with the judge. I realized I couldn't tell the courtroom what was happening in the jury room. If I did, it would give the case away. I had wanted to talk privately with the judge because I believed the other jurors were violating the rules on how jurors must treat each other. I remember wanting to tell him that our deliberations were just like the movie, *Twelve Angry Men*. I know however from the judge's instructions that I was not allowed to discuss what was going on with the case, but I thought that if we were alone, it would be ok to explain what was going on in the deliberation room. I never got the chance to talk with the judge in private.

*Affidavit of Beth Hill*, December 8, 2000, p. 7.

In addition to Hill's statement indicating that the trial judge was misled, Henry offers other affidavits, which the Majority ignores, in support of his claim that Hill's status as the lone holdout against the death penalty was a factor in her dismissal and thus his constitutional rights were violated. For example, Hill states that when deliberations began, she was the lone juror who voted against imposing the death penalty. She explained that she did not believe that Henry deserved the death penalty because of his background and because she believed that he panicked when Officer Ingram approached him. She stated that after explaining her reasoning to the other jurors, "the jury room seemed to explode with angry voices," with some jurors verbally attacking her and accusing her of being a murderer,

23

which precipitated her abdominal pains and visit to the hospital.  She also explained that the atmosphere was tense when she rejoined the rest of the jurors the next morning.

Thus, there is evidence showing that the other jurors were angered by Hill's opinion, but she did not have a chance to explain this to the judge.  The jurors' plan to mislead the judge because of her opinion is also shown by juror Holland's statement that when Hill returned, she indicated that she was ready and able to deliberate, but Holland explained that "[w]e all talked about it and decided that we, as the jury, should inform the Judge of our concerns over her state of mind, because she wasn't going to vote for death, no matter what.  I didn't feel uncomfortable talking about the case in front of her, but I knew that we would be deadlocked if she stayed on the jury."  Jenny Ewing O'Brien also recalled a conversation with juror Gant who explained that "[a]fter Ms. Hill was taken to the hospital, the jury discussed what would happen next.  They agreed that she would not be coming back and that the alternate would be put in. . . . Mr. Gant thought he was a reasonable man who they could work with."  Also, Gant noted that when the jury learned Hill would be returning to deliberations, the foreman was displeased and told the jury: "She is coming back with a mission.  She is coming back to save that boy's life."  Rebecca Cohen also recalled another conversation with juror Gant who stated that "[t]he jury agreed as a whole that they did not want to be

24

deadlocked.  To avoid this possibility, the jury decided that the foreman should write a note to the judge explaining that if Beth Hill returned to the jury they would never reach a verdict."  Jeffrey Ertel recalled a separate conversation with juror Walker, who relayed that jurors may have gotten together in the hotel to discuss Hill and may have written a note requesting that Hill be removed from the jury because they were deadlocked.

After the benefit of discovery and evidentiary development, the district court may conclude that Henry's evidence of juror misconduct is still insufficient. However, it is premature to conclude that Henry cannot overcome the procedural default without the benefit of a more developed record, especially when the district court held that he was not entitled to an evidentiary hearing because, in part, his evidence was insufficient to support his claim.  The use of such circular logic to conclude that Henry has not shown cause and prejudice constitutes an abuse of discretion.

I respectfully dissent.